Mrs. Doris Mater, as Administratrix of the Estate of Howard Duane Mater, Deceased, et al., Appellants, v. Silver Cross Hospital, Appellee.

Gen. No. 9,032.

438

 Opinion filed May 15, 1936.

HIGGINS & WALTER, of Joliet, and KROHN & MAC-DONALD, of Chicago, for appellants; STUART B. KROHN, of counsel.

ROBERTSON, CROWE & SPENCE, of Chicago, for appellee; BURT A. CROWE and JOHN H. SAVAGE, of counsel.

MR. PRESIDING JUSTICE HUFFMAN delivered the opinion of the court.

Appellee is a non-profit, charitable corporation, located in the city of Joliet. The administratrix was about to be delivered of a child. Her husband, Joseph Mater, a short time prior to May 12, 1933, called upon Mr. Hueston, manager of appellee institution and made arrangements for Mrs. Mater to be received at the hospital for the birth of the child. It is claimed by Mr. Mater that Mr. Hueston agreed that Mrs. Mater would receive the best of care, and that the entire services and facilities of the hospital, together with all of its attendants, would be at her disposal. It ap-

pears by appellants' evidence that Dr. Welch had been attending Mrs. Mater during the whole course of her pregnancy; that the birth of the baby was attended by him at the hospital on May 12; that the case did not require the services of an interne or of any other doctor; that there were nurses present who assisted Dr. Welch in whatever way he requested; that it was a normal birth and without any complications. Mr. Mater selected the room at the hospital and advised Mr. Hueston, the manager, that Dr. Welch would take care of the case; that he had hired Dr. Welch for that purpose. After the birth of the child, Mrs. Mater was removed to her room and the baby placed in the nursery. Dr. Welch continued to attend the mother and baby during their entire stay at the hospital, which was for 10 days. During the time the mother and child were at the hospital, Dr. Welch performed a circumcision upon the child. After the mother and child returned home from the hospital the child developed erysipelas, from which it died. This suit resulted. At the close of all of the evidence in the case, the court instructed the jury for the defendant. The appellants have prosecuted this appeal from the judgment of the court upon the verdict returned.

The complaint consists of two counts, the first of which sought recovery of $10,000 damages for and on behalf of the mother, the father, and a brother of plaintiff's intestate, as the heirs at law and next of kin of said deceased. The 9th and 10th paragraphs of this count are as follows:

"9. That the plaintiffs' deceased, Howard Duane Mater, died on to wit, the 7th day of June, A. D. 1933, and suit was instituted herein within one (1) year from the day and date of death, in compliance with the provision of the statute in such case made and provided.

"10. That by reason of the said death of plaintiffs' deceased, Howard Duane Mater, his aforementioned heirs at law and next of kin, and each of them, have

suffered pecuniary loss and damages in the amount of Ten Thousand Dollars ($10,000), wherefore, plaintiffs demand judgment against the defendant in the sum of Ten Thousand Dollars ($10,000).''

The trial court dismissed this count of the complaint. Appellants excepted thereto, urging that the count was good, and further that it had been so held by another judge at a prior term of court. They now urge such action of the trial court as grounds for reversal herein. We are of the opinion that it is the duty of a trial court, when it becomes satisfied that an erroneous ruling has been made concerning a pleading, to set aside such ruling. *Shaw v. Dorris,* 290 Ill. 196, 204. This count was manifestly for injuries based upon the tort or negligence of the hospital. It is admitted that appellee institution is a non-profit, charitable corporation, and not operated for private gain. The court did not err in striking this count of the complaint. *Hogan v. Chicago Lying-In Hospital,* 335 Ill. 42.

The second count was based on assumpsit and not in tort. *Armstrong v. Wesley Hospital,* 170 Ill. App. 81. It set up an alleged contract between the parties whereby the defendant for a consideration, undertook and agreed to do certain things, which plaintiff claims defendant failed to perform, to plaintiff's damage of $5,000, consisting of expenses for medical and hospital services, funeral bills, and otherwise. The case was heard upon the second count, and at the close of all the evidence, the court instructed the jury for the defendant as aforesaid.

It is claimed by the administratrix and her husband that the deceased child contracted erysipelas at appellee institution because of appellee's failure to carry out its undertaking and promise to furnish skilful and competent medical and surgical services. Appellants called Dr. Welch as one of their witnesses. His testimony supported that of Mr. and Mrs. Mater in that he

was their regular family physician and that he had attended Mrs. Mater during the entire period of her pregnancy; that he attended her at the birth of the baby and during their entire stay at the hospital. The testimony of Dr. Welch further shows that he did the circumcision at the instance of the parents; that there was nothing about the birth of the child to require the services of any other doctor; that he had used this hospital for about 28 years; that some nurses assisted him at the time of birth but he did not remember how many; that there was no rash on the child at the time it left the hospital and that it did not run any fever. The doctor states he saw the baby every day while it was at the hospital; that he saw the mother and child at the hospital the day they left; that the child at that time was perfectly well and normal and that it did not then have erysipelas. The next time Dr. Welch saw the baby was about five or six days after the mother and child had returned home. At this time he found a swelling at the site of the operation, but states that it was not red, was not indurated, and was not at that time what he would call erysipelas. On May 31, Dr. Wilhelmi examined the child and upon examination found a red induration involving the skin of the pubic region including the site of the operation, which he pronounced as erysipelas. The child died from this disease on June 7th.

The mother insisted that a rash appeared upon the baby's forehead about two days after the circumcision, and that this spot remained there until its death. She further claimed that at the time of leaving the hospital, when the nurse was showing her how to bathe the baby, there was a rash about the pubic region. It is claimed by the mother that this rash continued and was the same as was later pronounced erysipelas. The nurse to whom the administratrix refers, testified on behalf of appellants, and she states that she does not recall

the baby having any rash while in the hospital. Appellants called another nurse who worked in the hospital at the time the administratrix was there, for the purpose of showing that a case of erysipelas was in the hospital at that time. This nurse states there were no cases of erysipelas in the hospital during the time Mrs. Mater and the child were there.

The evidence set out in this opinion is such as was presented by appellants. It establishes that they employed Dr. Welch to care for administratrix and the child; that he did so; that no need arose at any time for the services of any other doctor; that the administratrix and the child were under the care and charge of Dr. Welch while in the hospital; and that he performed the operation. Appellants made their own arrangements with him and the hospital had nothing to do with the furnishing of his services. His testimony discloses that, "the baby was perfectly well and normal" when it left the hospital and did not then have erysipelas. The nurse who instructed the administratrix how to bathe the baby denied any knowledge of a rash on the child, as claimed. These were appellants' witnesses. There is nothing in the record to indicate how long a time it takes for erysipelas to develop after the germ enters the body. It does not appear from the evidence how or when the child became infected with this disease. It would be mere conjecture for the court to attempt to say. We are in accord with the statement of the trial court that there is no evidence in the record going to show the child contracted the disease from which it died, while in the hospital. We do not consider there is sufficient evidence appearing in the record to sustain a verdict for plaintiffs below, and the trial court did not err in directing a verdict for appellee.

*Judgment affirmed.*