## Anthony LaCerra, Appellee, v. Edward Woodrich, Appellant.

### Gen. No. 42,292.

Heard in the second division of this court for the first district at the June term, 1942. Opinion filed December 14, 1943.

BARNET HODES, Corporation Counsel, for appellant; JAMES A. VELDE, EMIL J. BROZ, JOSEPH W. GRIGAL, J. HERZL SEGAL, L. LOUIS KARTON and BARNEY FAGEN, Assistant Corporation Counsel, of counsel.

HERMAN R. TAVINS, of Chicago, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff, Anthony LaCerra, sued Edward Woodrich and Steve Kasper, police officers of Chicago, to recover damages for personal injuries sustained by him and for damages to his automobile. Plaintiff dismissed the suit as to Kasper. The case was tried before the court and a jury and a verdict was returned finding defendant Woodrich guilty and assessing plaintiff's damages at $500. The jury answered the following interrogatory affirmatively: "Was the defendant, Edward Woodrich, guilty of wilful and wanton operation of Squad Car 121, property of the police department of the City of Chicago at and immediately before the time of collision of said squad car with the one in which the plaintiff was riding?" Plaintiff remitted $200 of the amount of the verdict and a judgment was entered in favor of plaintiff for $300. Defendant appeals.

There was a collision between a police squad car driven by defendant Woodrich and an automobile driven by plaintiff, on June 13, 1939, at about 8:15 a.m., at the intersection of Division street and Humboldt drive, in Chicago. Division street runs east and west and has two lanes, the south lane for east bound traffic and the north lane for west bound traffic. There is room in each lane for two cars and there is a parkway in the middle of the street. Humboldt drive runs north and south and is wide enough to allow two cars to proceed in each direction. There are automatic stop lights at the intersection. Defendant's theory of fact was that he was driving a police squad car east on Division street toward Humboldt drive; that he and Kasper were then pursuing a truck driver because they had noticed as the truck passed them that it bore no name and that the license plate in the back was bent up; that the lights at Humboldt drive were green

as they approached the intersection and started across it; that Kasper had sounded the siren at Kedzie and Division streets, a block west of Humboldt drive, and that "the siren may be heard for blocks in an open space;" that the police car was being driven at about thirty-five miles an hour; that plaintiff's car was going north on Humboldt drive at a very slow rate of.speed and that defendant thought that plaintiff was ready to stop; that when plaintiff's car moved in front of defendant's car defendant swerved the police car to the left in an effort to avoid the collision; that plaintiff made no effort to avoid the collision. Defendant admitted that the collision occurred outside of the boundaries of "the tour of duty" that he traveled. Plaintiff's theory of fact was that the collision occurred outside of the boundaries that defendant traveled in the performance of his duties; that defendant was not in pursuit of a truck at the time of the collision; that at the said time and immediately prior thereto defendant was driving the police car at the rate of forty-five to fifty miles per hour; that as defendant entered the intersection the stop and go lights at the intersection were green for plaintiff and that, therefore, plaintiff had the right of way; that there was no siren sounded on the police car at a time when it could be heard by persons driving along Humboldt drive near the intersection; that the jury were fully warranted in finding from the evidence that defendant Woodrich was guilty of wilful and wanton operation of the police car at and immediately before the time of the collision. There was proof to support each theory and after a careful examination of all of the evidence we are satisfied that we would not be justified in disturbing the findings of the jury. Defendant specially contends that there is no evidence tending to prove wilful and wanton conduct.

". . . Whether the negligent conduct of a defendant which has resulted in injury to another amounted to wantonness is a question of fact to be de-

termined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a willful disregard of consequences or a willingness to inflict injury. (*Lake Shore and Michigan Southern Railway Co. v. Bodemer, supra* [139 Ill. 596].) An intentional disregard of a known duty necessary to the safety of the person or property of another and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, make a case of constructive or legal willfulness such as charges the person whose duty it was to exercise care with the consequences of a willful injury. (1 Thompson on Negligence, secs. 20, 22.)'' (*Walldren Express Co. v. Krug,* 291 Ill. 472, 476, 477.)

''. . . It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of negligence the law considers equivalent to a willful or wanton act. Whether an act is willful or wanton is greatly dependent upon the particular circumstances of each case. Where the omission to exercise care is so gross that it shows a lack of regard for the safety of others it will justify the presumption of willfulness or wantonness.'' (*Bernier v. Illinois Central R. R. Co.,* 296 Ill. 464, 470, 471.)

We are satisfied that there was sufficient evidence to warrant the jury in finding that defendant's actions, just prior to and at the time of the accident, constituted wilful and wanton conduct.

Defendant contends that the trial court erred in not directing a verdict for defendant on the malice count after it had directed a verdict for defendant on the negligence count. Counts one and two relate only to the defendant Kasper. Count three charges defendant Woodrich negligently caused the collision, and count four charges that he was guilty of wilful and wanton

conduct in causing the collision. At the conclusion of the evidence the trial court, upon motion of defendant, instructed the jury to find defendant Woodrich not guilty as to count three, and denied his motion to instruct the jury to find him not guilty as to count four. Defendant now argues that when the trial court directed the verdict on the negligence count, "it was incumbent upon him to direct a verdict on the count charging wilful and wanton conduct." Judge HAYES, who tried the instant case, also tried the case of *Styblo v. McNeil,* 317 Ill. App. 316, wherein the defendant, a police officer, driving a police car of the City of Chicago, was found guilty of wilful and wanton conduct in the collision of the police car and the Styblo automobile. In that case the complaint contained a negligence count and also a wilful and wanton count, and, as in the instant case, the corporation counsel succeeded in having the trial court direct a verdict for the defendant on the negligence count, and upon appeal they made the same point they are urging here. The Third Division of this court, speaking through Mr. Presiding Justice BURKE, said (pp. 326, 327):

". . . Defendant asserts that the trial judge erred in failing to direct a verdict as to the wilful and wanton count after he had directed a verdict on the negligence count. A careful examination of the record convinces us that the court did not err in refusing to direct a verdict on the wilful and wanton count. Our view is that the court erred in directing a verdict in favor of the defendant as to the negligence count. We believe that there was sufficient evidence to go to the jury on both counts."

That statement applies with equal force to the contention in the instant case. Defendant caused the trial court to err in instructing the jury to find defendant not guilty as to the negligence count and he is in no position to take advantage of that error. As the case

went to the jury it presented the same situation as though the statement of claim had charged wilful and wanton conduct only.

Defendant contends that in instructing the jury the language used by the trial court in defining wilful and wanton conduct was confusing. We find no merit in this contention.

The instant judgment, after assessing plaintiff's damages in the sum of $300, provides "that execution issue therefor, and malice body execution to issue." Defendant complains that the order in the judgment, "malice body execution to issue" "did not comply with statutory requirements," and that "the provision in the judgment for the issuance of a body execution was invalid." Defendant cites section 5 of the Judgment Act (Ill. Rev. Stat. 1941, ch. 77, sec. 5, as amended in 1935 [Jones Ill. Stats. Ann. 107.155]), which provides as follows: "No execution shall issue against the body of the defendant except when the judgment shall have been obtained for a tort committed by such defendant, and it shall appear from a special finding of the jury, or from a special finding by the court, if the case is tried by the court without a jury, that malice is the gist of the action, and except when the defendant shall refuse to deliver up his estate for the benefit of his creditors." Defendant argues that under section 5 "it is mandatory, before a body execution issue, that there be a special finding of the jury as well as a provision in the judgment stating explicitly that malice is the gist of the action," and cites *Ingalls v. Raklios*, 373 Ill. 404, and *Peiffer v. French*, 376 Ill. 376, in support of his argument. In the *Peiffer* case the court said (p. 379):

". . . This court held in *Ingalls v. Raklios*, 373 Ill. 404, that to comply with the statute, the judgment must contain a finding that malice is the gist of the action and that that finding must appear on the face of the judgment. A *capias ad satisfaciendum* is not

lawful unless the court, if the case is tried without a jury, includes in its judgment a special finding that malice is the gist of the action. In a case submitted to a jury the jury must make a special finding of facts from which it shall appear that malice was the gist of the action. In such a case the judgment must include a special finding that malice was the gist of the action. The judgment in this case did not include a special finding that malice was the gist of the action.''

The instant judgment order did not include a special finding that malice was the gist of the action, and therefore the order in the judgment, ''malice body execution to issue,'' was not a sufficient compliance with the statute upon which the clerk of the court could issue an execution against the body of defendant. But the entry of the order in question in the judgment does not affect the merits of the cause and does not require that a new trial be granted.

Sometime after defendant filed his reply brief in this cause he filed a supplemental brief and argument, in which he raises, for the first time, the following contentions: (1) The City of Chicago could not be held liable for the injuries caused to plaintiff by Woodrich even though the injuries were caused by the wilful and wanton conduct of Woodrich. (2) ''By reason and logic it must necessarily follow that the police officer is exempt from liability even though the jury has found that his conduct is constructively willful and wanton.'' The supplemental brief raises a novel question and counsel for plaintiff should have filed an answer to that brief, thereby aiding the court, but he has not seen fit to do so. Contention (1) states a correct principle of law, but the proposition of law advanced in contention (2) is unsound, and defendant does not cite any authority that supports it. Defendant cites authorities that adhere to the rule that a municipality is not responsible for the unlawful or negligent acts of policemen in the discharge of their

public duties, *even though the conduct of the police-man is of a malicious nature,* and defendant strenu-ously argues that the courts cannot logically give such protection to the municipality "without also giving to the police officer *protection co-extensive with that of the municipality.*" (Italics ours.) Defendant cites *Taylor v. City of Berwyn,* 372 Ill. 124, and *Miralago Corp. v. Village of Kenilworth,* 290 Ill. App. 230, in support of his contention, but neither case supports it. The complaint in the *Taylor* case charged only negli-gence. (See *Taylor v. City of Berwyn,* 297 Ill. App. 417, 419.) The plaintiff in the *Miralago Corp.* case sued only the Village. It is somewhat surprising that defendant saw fit to cite the *Miralago Corp.* case, as the opinion therein seems to be in sympathy with the authorities that have departed from the old theory of nonliability of cities for negligence in the performance of governmental functions. We do not think that any respectable authority can be found that would sup-port the proposition of law urged by defendant. *City of Chicago v. Williams,* 182 Ill. 135, 137, holds ad-versely to defendant's contention and the opinion cites several cases that hold that the municipality is not liable for illegal acts committed by police officers in the performance of their duties, but that the police officers are liable as individuals for the commission of such acts.

In *Board of Trustees of the Town of Odell v. Schroe-der,* 58 Ill. 353, a case often cited, the plaintiffs sued the President and Board of Trustees of the Town of Odell for false imprisonment, and it was held that the municipal corporation was not liable for the illegal and unauthorized act of its officers in arresting plain-tiff. In its opinion the court says (pp. 355, 356):

". . . The fact that the trustees adopted the or-dinances, and appointed the town constable to see they were executed, did not render the town liable for the

unauthorized, illegal and oppressive acts of that officer. They, as the representatives of the town only empowered him to do what the ordinance required, and not to oppress citizens of the place. They did not direct the act to be done, either as a board or as individuals; they, we must suppose, had no idea the officer would do anything more than the law required. All officers are required to perform their duty, and the electing or appointing power expects them to do no more; and if they should, that power is not responsible for the wrong. *This was the individual act of the officers.''* (Italics ours.)

In *Wisher v. City of Centralia,* 273 Ill. App. 168, the plaintiff charged that the City of Centralia and certain police officers maliciously published and posted the name of plaintiff in a certain rogue's gallery maintained by the said City in the city police station, by means of which the plaintiff was damaged. The defendants contended that in doing the act charged they were pursuing a governmental function and hence were not liable, being exempt therefore from liability for torts. The Appellate Court held that the City of Centralia was not liable for the libel, but the court said (pp. 175, 176):

''So far as the individual defendants are concerned, we do not accept this view. The charge against them is that they maliciously defamed plaintiff. If, as the declaration charges, they did, with malice and evil intent, without reason, publish him as a rogue, they should respond at law to plaintiff. If they made use of their official position to vent their malice, by giving to a malicious publication of false import the color and weight of an official action, then the official appearance given to the action would not excuse them from responsibility, but would add iniquity to the wrong done. *We do not know authority nor see reason for saying that those who had done as this declaration*

*charges the individual defendants with doing should not be required to answer in damages to the injured person."* (Italics ours.)

The court ordered that the demurrers of the individual defendants be overruled and that they be ordered to plead to the declaration.

In *Robertson v. City of Marion*, 97 Ill. App. 332, the plaintiff sued the City and certain of its officers to recover damages sustained on account of his arrest and prosecution by the defendants for a violation of certain ordinances of the city. The Appellate Court, adhering to the established rule, held that the demurrer of the City was properly sustained, but the court further held that the rule that exempted the City did not apply to the other defendants. However, the decision of the trial court sustaining the demurrer of the other defendants to the declaration was approved because the declaration as to said defendants did not make out a *prima facie* case. Defendant insists that the contention he now raises was not interposed in *Styblo v. McNeil*, and, therefore, that case is not an authority against his present contention. We are not aware of any case wherein the point now made by defendant was urged save in the *Wisher* case, *supra*. If the position of defendant is sound, then a police officer in arresting a citizen for a misdemeanor may wantonly and wilfully and without provocation beat and seriously injure him, and still the latter would have no redress against the officer for his outrageous conduct. In the case just assumed the officer exceeds his duties and when he commits the illegal assault he is acting as an individual. A police officer is appointed to protect citizens, not to oppress them, and the municipality would have no power to authorize officers to commit illegal acts. Defendant's contention (2) if upheld would announce a new and dangerous doctrine. The statement in defendant's supplemental brief, that if we do not sustain his contention the City of Chicago

will have extreme difficulty in finding men willing to become or remain police officers, is an unjust reflection upon the members of the police department. The rank and file of the police department is composed of law abiding men who do not oppress citizens nor commit illegal acts, nor wanton and wilful acts, against them.

We are aware that the legislature has recently passed section 1—15 of the Cities and Villages Act (ch. 24, par. 1—15, Ill. Rev. Stat. 1943 [Jones Ill. Stats. Ann. 21.1123(1)]), which reads as follows: "Liability for injuries caused by policeman.) In case any injury to the person or property of another is caused by the negligent operation of a motor vehicle by a member of the police department of a municipality having a population of 500,000 or over, while the member is engaged in the performance of his duties as policeman, and without the contributory negligence of the injured person or the owner of the injured property, or the agent or servant of the injured person or owner, the municipality only, in whose behalf the member of the municipal police department is performing his duties as policeman shall be liable for that injury. . . ." That section does not apply to the instant case because it was not approved until July 9, 1943. Moreover, that section does not exempt a police officer who is charged with wilful and wanton conduct in the operation of a police department motor vehicle, and it must be presumed that the legislature in confining the exemption to the negligent operation of a motor vehicle had in mind the legal meaning of the words "wilful and wanton."

Century dictionary defines "wilful" as follows: "Due to one's own will; spontaneous; voluntary; deliberate; intentional: as *wilful* murder; *wilful* waste." Webster defines it as follows: "Self-determined; voluntary; intentional; as *willful* murder." Century dictionary defines "wanton" as follows: "Characterized

by extreme recklessness, foolhardiness, or heartlessness; malicious; recklessly, disregardful of right or of consequences: applied to both persons and their acts." Webster defines it as follows: "Reckless; heedless; malicious; as, *wanton* mischief."

In *Hull v. Seaboard Air Line Ry.,* 76 S. C. 278, 281, it is said: "Each of the words, wantonness, wilfulness and recklessness, embodies the element of malice, either express or implied, and are in law substantially the equivalent of each other, in so far as they give rise to an action based upon punitive damages."

In *Palmer v. Smith,* 147 Wis. 70, 75, it is said that the word "wantonly" means "without reasonable excuse, and implies turpitude," and "such a degree of rashness as evinces a total want of care, . . . or willingness to destroy, although destruction itself may have been unintentional." See, also, *Walldren Express Co. v. Krug, supra,* p. 478, as to the meaning of the words "wanton" and "wilful." In that case the court said (p. 479):

". . . In *Chicago City Railway Co. v. Jordan,* 215 Ill. 390, we said: 'Where there is a particular intention to injure, or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes willful or wanton. In such a case there may be an actual intent to injure or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended.' *A charge of wantonness implies an act intentionally done in disregard of another's rights, designed and intentional mischief, and not a mere negligent omission of duty.*" (Italics ours.)

Had section 1—15 provided that a member of the police department driving a motor vehicle in the performance of his duties would be exempt from responsibility for injuries to another caused by his wilful and wanton conduct, a serious question would arise as to the constitutionality of such an Act.

The judgment of the municipal court of Chicago is affirmed save as to the words, ''malice body execution to issue.'' As to said words the judgment is reversed.

*Judgment affirmed in part and reversed in part.*

FRIEND, P. J., and SULLIVAN, J., concur.