Joseph Vincent Richichi, Individually and as Assignee of Adalbert O. Bielski, and Adalbert O. Bielski, Plaintiffs-Appellees, v. City of Chicago, a Municipal Corporation, Defendant-Appellant.

Gen. No. 48,974.

First District, Third Division.

May 28, 1964.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Harry H. Pollack, Assistant Corporation Counsel, of counsel), for appellant.

Ernst Liebman, Charles Pressman and Charles Liebman, of Chicago, for appellee, Richichi, James P. Chapman, of Chicago, for appellee, Bielski.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The case at bar in which Joseph Richichi and Adalbert Bielski are the plaintiffs and the City of Chicago is the defendant grew out of a suit in which Richichi was the plaintiff and Bielski was the defendant.

Richichi had sued Bielski for serious personal injuries suffered by him in 1950 when he was arrested by Bielski, a police officer of the City of Chicago. A judgment for $40,000 was returned in his favor in 1957. A new trial was granted upon the representation of the Corporation Counsel of the City, who had repre-

sented Bielski from the time the suit was commenced in 1952, that new evidence had been discovered concerning Richichi's injuries. The order granting the new trial was subsequently vacated and the judgment reinstated.

Execution was taken out but it was returned unsatisfied. Citation proceedings were brought, and in 1959, in open court, Bielski was ordered to turn over to Richichi $1.01, which was the only money he had on his person at that time. Later in the same year, Bielski was found to be without assets and the court ordered him to assign to Richichi his statutory right to indemnity from the City under section 1–15 of the Revised City and Villages Act (Ill Rev Stats 1957, c 24, § 1–15). The assignment was executed, and the present case, started in December 1959, is the action instituted by Richichi on this instrument. The prayer in Richichi's complaint was for a declaratory judgment establishing Bielski's right to indemnity from the City and for judgment for the whole amount in favor of Richichi.

The City, in 1960, filed a motion to dismiss the case on the ground that the order, which reinstated the judgment, was void for want of jurisdiction. After extensive argument and the submission of briefs, the motion was denied. The City thereupon answered Richichi's complaint denying the allegations therein and reasserting its contention that the order, holding the judgment to be in full force and effect, was void.

In 1961 Bielski was granted leave to join in Richichi's suit against the City as an additional party-plaintiff and to add a count of his own to Richichi's complaint. A jury trial in 1962 resulted in a verdict for the plaintiffs and the jury returned a special interrogatory finding that Bielski's actions did not constitute wilful misconduct. Judgment was entered for Richichi against the City for $40,000, plus interest and costs. It is from this judgment that the City appeals.

■■■■■■■■■■■■■■■■■■■■

The issues presented in the appeal are (1) whether the order vacating the new trial order was void for lack of jurisdiction; (2) whether the assignment of Bielski's indemnification rights enabled Richichi to bring suit against the City for the entire amount of the former judgment; (3) whether Bielski was guilty of wilful misconduct as a matter of law, and (4) whether the City received a fair trial.

■ The City contends that the order granting a new trial was a final order and the court lacked jurisdiction to vacate it a year after it was entered. This is a misconception of the nature of a new trial order, perhaps derived from the fact that a new trial order is given a tentative finality for appeal purposes by section 77 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 77). However, this "finality" is conditioned upon leave to appeal being allowed by a court of review; the order is not final in the sense of terminating the jurisdiction of the trial court. To be final in this sense the judgment or order must "terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment." The Village of Niles v. Szczesny, 13 Ill2d 45, 147 NE2d 371. In Kavanaugh v. Washburn, 387 Ill 204, 56 NE2d 420, the court discussed the nature of the finality accorded by statute to a new trial order and decided that it was not a truly final order:

> "The very purpose of an order allowing a motion for a new trial is to set aside the verdict of the jury and to place the parties in the same position they occupied before the trial. Thus, instead of being a step leading directly to a final judgment, it is the reverse. It places the whole matter back on the trial calendar for another trial. . . .
> ". . .

"The more reasonable construction, and the one which makes the statute more readily applied, is that the legislature intended to extend the right of appeal to an order granting a new trial under the conditions specified in section 77, but that it did not intend by the use of the word 'final' to thereby clothe such an order with all the finality that is given judgments or decrees which fix the rights of the parties on the merits."

The new trial order in the present case was not a final judgment. It did not settle the merits of the case, terminate the litigation between the parties or relieve the court of its jurisdiction over the subject matter.

██ An interlocutory order may be modified or vacated at any time. Shaw v. Dorris, 290 Ill 196, 124 NE 796; Skolnik v. Susco Production, 349 Ill App 402, 111 NE2d 180; Kelly v. Marks, 267 Ill App 199. "Apart from statute, an interlocutory order may be amended or vacated after the term at which it was made, if no final judgment or order has put the case out of court . . ." 60 CJS, Motions and Orders, sec 62c(3), p 70. As stated in 23 ILP, Judgments, sec 163: "The rule against amending or vacating a judgment after the expiration of the statutory period has no application to interlocutory judgments, and such judgments may be opened, amended, or vacated at any time while the proceedings remain in fieri, and before the final judgment."

██ ██ It is of no moment that the judge to whom the case was assigned for trial vacated the new trial order entered by the judge who presided at the first trial. A trial judge is not bound by the prior order of another judge. He has the right to review the prior order if in his judgment it was erroneous and he has the duty to do so if changed facts or circumstances make the prior order unjust. Shaw v. Dorris, 290 Ill

196, 124 NE 796; Montgomery Ward & Co. v. Retail, Wholesale & Department Store Employees, 348 Ill App 198, 108 NE2d 784; Mater v. Silver Cross Hospital, 285 Ill App 437, 2 NE2d 138. In this case changed circumstances did more than make it advisable for the second trial judge to review the order of the first. The new trial had been granted Bielski because there was said to be newly discovered evidence showing that Richichi had suffered brain damage in an automobile accident between the time he was injured by Bielski and the trial. Richichi petitioned the Appellate Court for leave to appeal from that order. In its brief opposing the petition, the City acknowledged that the new trial had been granted on the ground of newly discovered evidence. The brief stated:

> "The defendant's theory is (1) that the trial court properly granted a new trial based on the newly discovered evidence; (2) that the trial [court] ruled only on the petition for a new trial based on newly discovered evidence. . . ."

The petition for leave to appeal was denied in May 1958 and in June the Corporation Counsel withdrew as Bielski's attorney. As the time approached when the case was to be assigned for the second trial, Richichi served notice of this on the Corporation Counsel. The case was sent out and was again called for trial. Bielski did not appear in person or by counsel to avail himself of the opportunity given him to bring forth his supposed "newly discovered evidence." Without this evidence there was no reason or excuse for a new trial. The posture of the case reverted to what it was before the new trial was granted and the court, having jurisdiction over the interlocutory order, did not abuse its discretion in setting that order aside.

 Copies of the order reinstating the judgment were mailed the following day to Bielski and the Cor-

poration Counsel. After the citation proceedings against Bielski and the receipt, pursuant to court order, of his assignment, the City was notified and demand was made for the payment of the judgment. Upon the City's refusal to pay the judgment, Richichi brought his suit under the indemnification statute:

> "In case any injury to the person or property of another is caused by a member of the police department of a municipality having a population of 500,000 or over, while the member is engaged in the performance of his duties as policeman, and without the contributory negligence of the injured person . . . the municipality in whose behalf the member of the municipal police department is performing his duties as policeman shall indemnify the policeman for any judgment recovered against him as the result of such injury, except where the injury results from the wilful misconduct of the policeman." (Ill Rev Stats 1957, c 24, § 1–15.)

The City contends that this statute does not create any cause of action in favor of the injured party against the City, but merely allows the policeman who caused the injuries to recover indemnity and only for such amount as he has already paid on the judgment against him. While it is true that this court once ruled to that effect in Erickson v. Fitzgerald, 342 Ill App 223, 96 NE2d 382 (1950), the case cannot only be distinguished from the present one, but it must be considered in relation to the later case of Karas v. Snell, 11 Ill2d 233, 142 NE2d 46 (1957). In the Erickson case the judgment against the policeman was affirmed and this court also affirmed the judgment of the trial court which refused to enter judgment against the City upon the verdict against the policeman. This court said that if the defendant policeman paid the

judgment against him, then the City would have to indemnify him for the amount paid. It is not apparent that the issue of wilful misconduct had been adjudicated in the Erickson case; there had been no unsuccessful effort to collect the judgment; there had been no assignment of the policeman's rights to the injured party, and there had been no action against the City by the injured party and the policeman. The decision in Erickson is bottomed on the law of indemnity and the court stated that an indemnitor is obligated to reimburse his indemnitee for loss suffered but never directly to perform the obligation indemnified. In Karas v. Snell, the Supreme Court pointed out that the analogy to an indemnity bond was not sound. The Supreme Court said:

"The case at bar involves a special statutory liability over. While there is a certain desirable simplicity in comparing the statutory liability of the city to public liability insurance, . . . or in likening it to an indemnity bond, we must not be misled by terminology and reduce the judicial process to epithetical jurisprudence. The conditions of the liability over in the case at bar are clearly set forth in the statute. They are not identical to the conditions of liability over contained in the typical public liability policy, or in the usual indemnity bond."

The City claims that the legislative intent is indicated because the statute once provided for the direct liability of the City to the injured party and now only provides for indemnification to the policeman. The former liability was limited to the negligent operation of a motor vehicle. Ill Rev Stats 1943, c 24, § 1–15. This was later amended to provide for the indemnification for all acts of the policeman. The indemnification is for any judgment recovered against the policeman, and not for the payment thereof; there

is no stipulation in the statute that the policeman must first pay the judgment to establish the City's liability. The evolution of the statute was also dwelt upon in Karas v. Snell, supra.

In Karas the plaintiff first obtained a judgment for $169,900 against the defendant, a policeman for the City of Chicago, and then brought suit against both the policeman and the City seeking a declaratory judgment that the policeman had a right to be indemnified by the City and that the plaintiff had the right to recover such sum to satisfy the judgment. The policeman filed a counterclaim against the City for the use of the plaintiff. The trial court entered a summary judgment declaring that the City was liable to the policeman for the use and benefit of the plaintiff. On appeal the decision was reversed because there had been no determination that the policeman was engaged in the performance of his duties as a policeman when the injury was inflicted nor any finding that the injury did not result from wilful misconduct on the part of the policeman. But as to the right of the injured party to receive the benefit of the indemnity, the Supreme Court stated:

"We there held [Gaca v. City of Chicago, 411 Ill 146] that the legislation relieved the policemen in the City of Chicago from being restrained in performing their duty by fear they might be called upon to pay a substantial judgment and relieved them from the burden of carrying public liability insurance. One judgment here appealed from was based on the counterclaim of Snell and was in his favor for the use of Karas. The fact that Karas, upon payment of the judgment, would receive a vicarious benefit as a creditor of Snell does not vitiate the statute."

The Court stated that the legislation was of benefit to the people of this state because of their interest in

law enforcement in the City of Chicago. The purpose of the statute is well defined in Gaca v. City of Chicago, 411 Ill 146, 103 NE2d 617:

> "Under the instant law, a metropolitan policeman will not be deterred or restrained in the performance of his duty by the knowledge that, if he makes a mistake, he may be called upon to pay a substantial amount."

If it were held that the City would have to pay only such amount of the judgment as the policeman could afford to pay to the injured party, this would create a circuity of action and the purpose of the statute would be defeated. In the present case all the conditions of the City's liability have been established, i. e., the policeman was engaged in the performance of his duties and was not guilty of wilful misconduct. The plaintiff has obtained a judgment against the policeman for $40,000 and since December 4, 1958, the date of entry of the final judgment, has only been able to recover $1.01. If the City only had to reimburse Bielski for this $1.01, Bielski would have another $1.01 which Richichi could obtain. Bielski could again turn to the City for repayment of this $1.01, and so on until the $40,000 was paid in dribbles of $1.01. Back and forth this could continue, perhaps in a never-ending cycle if interest continued to accumulate (interest has already accrued for almost $9,000). The result would be that the judgment would continue to hang over Bielski's head, and the purpose of the statute would be defeated.

The procedure used in this case avoids the continued liability of the policeman. The same result would have occurred in Karas v. Snell, if it had been there established that the policeman was engaged in the performance of his duties as a policeman when the injury

330

was inflicted and that he was not guilty of wilful misconduct. Richichi is benefited by reason of being compensated for serious injuries sustained almost fourteen years ago, and Bielski is benefited because he no longer is subject to the burden of the judgment. The purpose of the statute is effectuated.

■■ The City next contends that Bielski was guilty of wilful misconduct and that Richichi is precluded from taking the position that Bielski was not guilty of such misconduct because of his pleadings and the evidence in the first case. To better understand this contention we must relate the evidence, which was approximately the same in both trials.

Richichi and Joseph Doherty, who was a witness for the City, testified that on the night in question they were having a late dinner at a restaurant when Doherty received notice that there was trouble at a hamburger stand he owned. They left the restaurant and upon their arrival at the stand learned that there had been a fight and a man by the name of Harold Nelson had been hurt. They decided to take this man to a hospital for treatment. Doherty, Richichi and Nelson got into Doherty's car and left. They had been driving for awhile on their way to the hospital when they heard a siren and pulled over to the side of the street. A police car came up beside them and Bielski got out of the police car and said: "Get out of the car crooks, I'll teach you to run away from the police." They testified that they had not been speeding and could not understand why they were stopped by the police. Doherty, who was in the driver's seat, got out first and was placed in the police car, a squadrol. Nelson became excited and climbed over Richichi and got out on the driver's side. Bielski hit him more than once on the head with a blackjack. He hit him again when Nelson fell to the ground. Nelson was also

taken into the squadrol. Richichi then got out and in squeezing under the steering wheel, placed his hands on the car seat. Bielski said: "I thought I told you to keep your hands away from your pockets," and hit him several times on the head with the blackjack. Richichi was knocked down, his head striking the automobile as he fell. He became unconscious, but Bielski continued hitting and kicking him until his partner told him to stop. His head was bleeding and after he was put into the squadrol he became nauseated, vomited and fainted. The police took him to the station, then to a hospital for treatment and back to the station where he was locked up and charged by Bielski with disorderly conduct and resisting arrest. He was later acquitted and Bielski apologized.

Bielski testified that on the night of the arrest he and his partner were patroling an area in the squadrol when they received a report of a disturbance in their vicinity. He explained that earlier that evening they had been informed of the kidnapping of a jewelry salesman by three men who were described as armed, hatless and driving a dark sedan. As they approached the scene of the recently reported disturbance, Bielski saw three men leaving a restaurant; they were hatless and the man in the middle was being helped by the other two. The men got into a dark sedan and, according to Bielski, sped away without any lights, went through a red light and made an illegal left turn. A man on the corner hollered: "There they go, I will sign a complaint against them." The police pursued the car, which was going about 45 or 50 miles an hour, but lost sight of it after it made several turns down side streets. Later they spotted the car parked on the side of a street under overhanging trees. During the pursuit Bielski and his partner discussed the possibility that the men they were after might be the

kidnappers. They approached the car and ordered the men to get out with their hands up. The driver got out peaceably and got into the squadrol. The next man came out and, according to Bielski, struck Bielski on the shoulder. Bielski hit him with a flashlight he had in his left hand and knocked him down. Bielski further testified that Richichi then got out of the car and hit him. Bielski hit him back with the flashlight and they both fell down. Bielski's partner broke up the fight, Richichi was placed in the squadrol and they all proceeded to the police station.

 It is apparent that a dispute in the facts exists and that it cannot be said as a matter of law that Bielski was guilty of wilful misconduct. The mere fact that a conclusion different from the one reached by the jury could be drawn from the evidence does not warrant a reversal. A wilful and wanton act is one which shows a deliberate intention to harm, or which shows an utter indifference to or a conscious disregard for the safety of others. Ficht v. Niedert Motor Service, Inc., 34 Ill App2d 360, 181 NE2d 386. Whether an act is wilful and wanton depends upon the circumstances of each case and is, therefore, left to the jury's determination. Ficht v. Niedert Motor Service, Inc., supra; La Cerra v. Woodrich, 321 Ill App 107, 52 NE2d 461.

The issue of wilful misconduct was not present in the original suit against Bielski. Richichi's fourth amended complaint, upon which the verdict was rendered, contained five counts of negligence, none of wilful misconduct; and the court instructed the jury that the defendant was charged with negligence. The prior judgment is not conclusive on the issue of wilful misconduct because it was not presented and adjudicated. Karas v. Snell, supra. On the other hand, in the present case the issue of wilful misconduct was squarely before the court and was presented to

the jury in the form of a special interrogatory to which the jury answered that Bielski was not guilty of wilful misconduct.

Finally, the City contends that it did not receive a fair trial because of evidence admitted and excluded, instructions given and refused and prejudicial conduct and argument. We have examined each of the purported errors. In many instances they were not included in the defendant's post-trial motion. For example, the defendant sets out in its brief fifteen examples of the erroneous admission of evidence, ten of which were not in the post-trial motion. Similarly, only one instruction was referred to in the motion—this a City instruction which was refused; and of the alleged errors in conduct and argument, few were objected to in the trial or in the motion. In order to rely on such errors as grounds for a new trial and to save them for review, a party must include them in its post-trial motion (Ill Rev Stats 1961, c 110, § 68.1(2)) and set them out with particularity. Perez v. Baltimore & O. R. Co., 24 Ill App2d 204, 164 NE2d 209; Handler v. Eckhouse, 45 Ill App2d 382, 195 NE2d 838. In our opinion, the supposed errors which were contained in the post-trial motion either are not errors or are not serious errors; not one of them singly nor all of them jointly would constitute grounds for reversal.

The principal issue before the jury was whether Bielski was guilty of wilful misconduct. Both sides were guilty of occasionally straying from this issue. In explanation of this we observe that the viewpoints of both parties in the second trial differed greatly from what they were at the time of the first trial. A decided change had taken place. Richichi, who had charged Bielski with more serious offenses in his earlier pleadings, now spoke of him as being negligent only. And the City, which had zealously defended Bielski against all charges, now berated him and labeled his conduct as

334

wilful. In its brief in this court it characterizes his beating of Richichi as brutal, as inhuman and as a flagrant example of wilful misconduct. Surprisingly, although the City speaks this way of the officer it once represented, it has never discharged him, suspended him or even reprimanded him. He is still on the force, with no charge of any kind having been preferred against him. This was so stipulated by the City at the trial. Because of the change in the attitude of the parties, it was inevitable that references would be made by both of them to previous pleadings and prior testimony in an endeavor to show contradictions and admissions against interest. If extraneous issues, brought about by the shifting positions of the parties, were injected into the case, both parties were equally responsible and a careful perusal of the record discloses that neither was harmed thereby.

 The jury decided the issue of Bielski's wilful misconduct by both its general verdict and by its answer to the special interrogatory. There was sufficient competent evidence introduced by both parties to enable the jury to make a proper determination of the issue. In the absence of prejudicial error, a verdict will not be reversed because incompetent evidence may have been admitted which could not have affected the outcome of the case, if there is in the record sufficient competent evidence to sustain the verdict. Ward v. Cozzi, 20 Ill App2d 297, 156 NE2d 222.

The judgment will be affirmed.

Affirmed.

SCHWARTZ, P. J. and SULLIVAN, J., concur.