BANK OF RAVENSWOOD, as Trustee, *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (4th Division) No. 1—98—1690

Opinion filed August 19, 1999.—Rehearing denied September 15, 1999.

WOLFSON, J., dissenting.

Steven G.M. Stein and Michael D. McCormick, both of Stein, Ray & Conway, of Chicago, for appellants.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Myriam Zreczny, Assistant Corporation Counsel, of counsel), for appellee.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

This appeal arises out of an action for damages caused by an alleged trespass by defendant, City of Chicago (City), on a tract of land in the Dearborn Park area which was owned and developed by plaintiffs. Plaintiff Bank of Ravenswood is the trustee of the property, while plaintiff Ogden Partners held the beneficial ownership interest in the property. Plaintiffs (collectively referred to as Ogden), appeal from a May 4, 1998, order of the circuit court of Cook County granting defendant's motion for summary judgment on damages and dismissing the action for trespass.

Plaintiffs' complaint sought damages for an alleged trespass arising out of the construction of a subway system under property plaintiffs purchased to develop into a residential townhome community known as "Dearborn Park II." The complaint alleged that the City failed to acquire a permanent easement for the subway to travel under the property and was thus liable for damages incurred, because Ogden had to construct a vibration insulation system (VIS) so that the residents could enjoy the property.

Plaintiffs filed a motion for summary judgment, which Judge Boharic granted, solely on the issue of liability. Defendants filed a motion to reconsider, which the court denied. The case was ultimately transferred to Judge Lichtenstein, where defendant filed a motion for summary judgment on the issue of damages, which was granted and the case dismissed.

In 1982, Dearborn Park Corporation (DPC) owned the property and sought to develop the land for residential purposes. In 1985, in accordance with DPC's development plans for the land, the City agreed to provide the infrastructure (streets, curbs, sidewalks, water service and streetlights) necessary for the community. Around the same time, the City proposed the Howard-Dan Ryan Project, to realign certain rapid transit lines within the City. The effect of this project as it related to Dearborn Park was that a subway tunnel would be constructed nine feet below the property's surface, spanning two city blocks of land.

The City and DPC engaged in communications and negotiations in which DPC would grant the City a permanent easement to construct, reconstruct, repair and maintain the subway tunnel. The parties entered into a right-of-entry agreement permitting the City to begin subway construction on January 9, 1986. The agreement, which was

effective for two years, was made with the assumption that the parties would later enter into a permanent easement agreement.

On June 21, 1988, DPC and Ogden executed a sale and purchase agreement on the Dearborn Park property. After plaintiffs took possession of the property, they hired an acoustical consulting firm because they were concerned about the noise and vibration potential of the subway connection running under the homes. On August 12, 1988, the firm was hired to prepare a report. On October 14, 1988, DPC and Ogden closed on the purchase of the property prior to finalizing the permanent easement with the City. On October 21, 1988, the acoustical consulting firm informed plaintiffs that a VIS was necessary and that one should be erected.

On February 22, 1990, Ogden filed a two-count complaint to enjoin trespass and other relief, naming the City and the Chicago Transit Authority as defendants. The suit was partially settled in April of 1991, when plaintiffs granted the City a permanent easement to operate trains in the subway tunnel beneath the property. Regular operation of the trains did not commence until after the easement was granted.

The City filed a motion for judgment on the pleadings on May 7, 1993, arguing that plaintiffs' trespass action was barred because DPC had committed to granting the permanent easement. The City also raised the defenses of consent, estoppel, waiver, and statute of limitations. Plaintiffs filed a motion for summary judgment on the issue of trespass and a motion for judgment on the pleadings. On September 24, 1993, Judge Boharic denied the City's motion and granted plaintiffs' motion for summary judgment on the issue of trespass.

On November 6, 1995, the City filed a motion to reconsider and a motion for summary judgment as to liability for trespass, which Judge Boharic denied.

The case was eventually reassigned to Judge Lichtenstein. On February 24, 1997, the City filed a motion for summary judgment as to damages on plaintiffs' trespass claim, which Judge Lichtenstein granted. In dismissing the case, Judge Lichtenstein stated:

"So he's [Judge Boharic has] basically said, I opine and I remove myself from the controversy. Let a jury of Illinoisans come in and be put to the burden of hearing that which the party plaintiff litigant would have them hear and we'll have another judge instruct the jury on the law, not the law as that judge believes the law to exist but the law as I believe the law to exist.

And then we could always go to the Appellate Court and if I'm wrong, great. Well I'm not having a jury of Illinoisans hear a case where I don't think there's any case to hear. I'm not instructing a

jury on Boharic's—the Honorable Boharic's theory of law as opposed to my theory of law."

Plaintiffs argue that Judge Lichtenstein erred when he granted summary judgment for defendant on damages and dismissed the case, contending he exceeded his authority by converting defendant's summary judgment motion on the issue of damages into a motion to reconsider Judge Boharic's ruling.

■ It is clear from Illinois law that plaintiffs' contention that Judge Lichtenstein erred in reconsidering a motion already ruled on by Judge Boharic is without merit. See *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 120, 382 N.E.2d 1217, 1220 (1978); *Consumers Guild of America, Inc. v. Illinois Bell Telephone Co.*, 103 Ill. App. 3d 959, 960, 431 N.E.2d 1047 (1981). The circuit court has the inherent power to modify or vacate an interlocutory order granting summary judgment anytime before final judgment. *Towns*, 73 Ill. 2d at 121. A court is not bound by an order of a previous judge and has the power to correct orders that it considers to be erroneous. *Richichi v. City of Chicago*, 49 Ill. App. 2d 320, 199 N.E.2d 652 (1964). However, the court disapproves of one judge reviewing interlocutory orders entered by another judge where there is evidence of bad faith or "judge shopping" by the party who obtains an adverse ruling. *Rowe v. State Bank*, 125 Ill. 2d 203, 213-14, 531 N.E.2d 1358, 1363 (1988).

In the instant case, Judge Boharic's orders were not binding upon Judge Lichtenstein and were subject to reconsideration. Here, the first summary judgment order was partial as it went to the issue of liability only. It was not a final and appealable order but interlocutory in character. Further, the record neither reveals any "judge shopping" nor do plaintiffs argue this theory. Under these circumstances, and in accordance with the case law, Judge Lichtenstein had the authority to rule on defendant's motion as he did.

■ Because we find that the trial judge's actions were proper, the court may review this matter *de novo*. A court of review may uphold a motion for summary judgment on any basis supported in the record. *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993). We affirm for the following reasons.

The City argues that Ogden was time-barred from bringing the instant action because it filed the action after the one-year statute of limitations period expired. See 745 ILCS 10/8—101 (West 1996). However, Ogden argues that the subway installed by the City was a continuing trespass and, therefore, not subject to any statute of limitations period. Alternatively, Ogden argues that should this court find that a statute of limitations period is applicable, it should be the four-year period that is found in the construction statute. 735 ILCS 5/13—214 (West 1996).

Ogden filed its first complaint against the City on February 22, 1990. The subway was constructed between 1986 and September of 1988. The subway did not began operating until February 21, 1993. In its motion for judgment on the pleadings and subsequent motion for summary judgment, the City asserted that Ogden's action was time barred by section 8—101. Section 8—101 states: "No civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8—101 (West 1996).

■ Ogden asserts that if any statute of limitations applies, it is section 13—214(a), which states in relevant part:

"As used in this Section 'person' means any individual, any business or legal entity, or any body politic.

(a) Actions based upon tort, contract or otherwise against any person for an act or omission of such person in the design, planning, supervision, observation or management of construction, or construction of an improvement to real property shall be commenced within 4 years from the time the person bringing an action, or his or her privity, knew or should reasonably have known of such act or omission." 735 ILCS 13—214(a) (West 1996).

■ To determine whether section 13—214(a) applies in this case, the court must decide whether the City's actions constituted an "improvement" to real property. An improvement is " '[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.' " *Cross v. Ainsworth Seed Co.*, 199 Ill. App. 3d 910, 921, 557 N.E.2d 906 (1990), quoting *Hilliard v. Lummus Co.*, 834 F.2d 1352, 1354 n.3 (7th Cir. 1987). Relevant criteria for determining what constitutes an improvement include: whether it became an integral component of the overall system, whether the value of the property was increased, and, as to the overall system, whether the value of the property was increased and whether the use of the property was enhanced. *St. Louis v. Rockwell Graphic Systems, Inc.*, 153 Ill. 2d 1, 4-5, 605 N.E.2d 555 (1992).

In this case, plaintiffs use the terminology "subway improvements" but there is no other evidence that it actually constituted an improvement. In order for section 13—214 to apply in the instant case, the construction and installation of the subway system must be the construction of an improvement to real property.

Plaintiffs argue that *Zimmer v. Village of Willowbrook*, 242 Ill. App. 3d 437, 610 N.E.2d 709 (1993), controls and supports their

contention that the four-year limitations period applies. In *Zimmer*, a property owner constructed a pond and a culvert on his property, which caused flooding on the nearby plaintiff's property. The court held this construction to be more than mere repairs and replacement to the property and remanded the cause for the trial court to determine the actual value and utility of the culverts. *Zimmer*, 242 Ill. App. 3d at 444.

■ Plaintiffs wish for this court to broadly find that any government construction works are an improvement to real property. This argument must fail. This court should look to whether the subway construction was an integral component of the overall system. In this case, the question would be whether the subway was an integral part of the function of the residential townhomes and enhanced the overall value. The answer would be no. A subway system, unlike a sewer system (*Continental Insurance Co. v. Walsh Construction Co.*, 171 Ill. App. 3d 135, 524 N.E.2d 1131 (1988)) or construction work on a traffic intersection (*Billman v. Crown-Trygg Corp.*, 205 Ill. App. 3d 916, 563 N.E.2d 903 (1990)), does not have any actual relation to the use or enjoyment of the real property located above it such that its presence could be considered an improvement.

Based upon the foregoing analysis, the one-year statute of limitations found in section 8—101 should be held to apply.

■ In Illinois, the "purpose of a statute of limitations is certainly not to shield a wrongdoer; rather it is to discourage the presentation of stale claims and to encourage diligence in the bringing of actions." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 137, 334 N.E.2d 160 (1975). Generally, a limitations period begins "when facts exist which authorize one party to maintain an action against another." *Davis v. Munie*, 235 Ill. 620, 622, 85 N.E. 943 (1908); *Kozasa v. Guardian Electric Manufacturing Co.*, 99 Ill. App. 3d 669, 673, 425 N.E.2d 1137 (1981). Thus, a plaintiff's cause of action accrues at the time its interest is invaded; the mere fact that the extent of its damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim. *Del Bianco v. American Motorists Insurance Co.*, 73 Ill. App. 3d 743, 747, 392 N.E.2d 120 (1979).

■ Where a tort involves a continuing or repeated injury, however, the statute of limitations does not begin to run until the date of the last injury or when the tortious acts cease. *Rock Falls v. Chicago Title & Trust Co.*, 13 Ill. App. 3d 359, 364, 300 N.E.2d 331 (1973). A continuing violation, however, is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. *Ward v. Caulk*, 650 F.2d 1144 (9th Cir. 1981). Moreover, "where there is but

one overt act from which subsequent damages may flow, it is held that the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature" of the injury. *Austin v. House of Vision, Inc.*, 101 Ill. App. 2d 251, 255, 243 N.E.2d 297 (1968).

■ Plaintiffs maintain that no statute of limitations period applies because the presence of the subway under the property constituted a continuing trespass violation. The City opposes this theory, arguing that the single act of constructing the subway does not comprise a "continuous" injury to plaintiffs.

In this case, the City constructed the subway between July and September of 1988. The record reveals that the subway did not begin its operation until 1993. Following the rule that a plaintiff's cause of action arises at the time its interest is invaded, plaintiffs' cause of action began to run during the period of the subway's construction. The fact that the subway was present below ground would be a continual effect from the initial violation but not a continual violation.

Because plaintiffs' cause of action accrued no later than September of 1988, the lawsuit filed on February 22, 1990, which was more than one year, was time-barred.

Lastly, while we are affirming the trial court, we feel compelled to mention that Judge Boharic carefully reviewed the record, listened closely to all arguments of counsel and thoughtfully weighed and evaluated the evidence and the law. We do not believe his actions merited the unkind remarks made by the successor judge.

Based upon the foregoing analysis, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, J., concurs.

JUSTICE WOLFSON, dissenting:

I agree that a trial court has the inherent power to modify or vacate an interlocutory order granting summary judgment anytime before final judgment. I also agree a trial court has the power to correct orders that it considers to be erroneous. But this judge didn't do any of these things. Instead, he granted summary judgment on the issue of damages. His reason, other than apparent pique toward Judge Boharic, is not reflected in the record.

Judge Boharic's order granting summary judgment on the trespass issue never was vacated, modified, or overruled. Nor did the City file any cross-appeal from Judge Boharic's order.

In fact, our opinion today does not seem to be directed at Judge Boharic's decision that the statute of limitations did not bar the lawsuit. At least, we don't say we are reversing his order. Instead, we do what Judge Lichtenstein did: the issue before us may be one of damages, but we decide the question of whether the lawsuit was time-barred.

I do not believe this is an orderly way to proceed, *de novo* review or not. I would send the case back to Judge Lichtenstein for resolution of the issue that was placed before him. If it comes back to us we can decide whether and how the statute of limitations might apply to the matter of damages after a holding that the statute does not apply to the filing of the complaint.