Docket No. 95019–Agenda 15–May 2003.

LYNN FELTMEIER, Appellee, v. ROBERT FELTMEIER, Appellant.

Opinion filed September 18, 2003.

JUSTICE RARICK delivered the opinion of the court:

Plaintiff, Lynn Feltmeier, and defendant, Robert Feltmeier, were married on October 11, 1986, and divorced on December 16, 1997. The judgment for dissolution of marriage incorporated the terms of a December 10, 1997, marital settlement agreement. On August 25, 1999, Lynn sued Robert for the intentional infliction of emotional distress. According to the allegations contained in the complaint, Robert engaged in a pattern of domestic abuse, both physical and mental in nature, which began shortly after the marriage and did not cease even after its dissolution.

On October 20, 1999, Robert filed a motion to dismiss the suit under sections 2–615 and 2–619 of the Code of Civil Procedure (735 ILCS 5/2–615, 2–619 (West 1998)), maintaining that the complaint failed to allege facts that give rise to an action for intentional infliction of emotional distress and that, even if the conduct alleged was actionable, the claim was not viable because the statute of limitations had run on most of the alleged misconduct. The circuit court denied Robert’s motion to dismiss on February 14, 2000. Robert then filed an amended motion to dismiss under section 2–619, arguing that provisions contained in the marital settlement agreement released him from the claim presented in Lynn’s lawsuit. The circuit court denied this motion on June 23, 2000.

On April 10, 2001, following a hearing on Robert’s motion for permissive interlocutory appeal, and pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), the circuit court made a written finding that its orders denying Robert’s motions to dismiss involved questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from the orders might materially advance the ultimate termination of the litigation. The three questions of law identified by the court were as follows:

“a. Whether the plaintiff’s Complaint states a cause of action for intentional infliction of emotional distress.

b. Whether the plaintiff’s claims for intentional infliction of emotional distress based on conduct prior to August 25, 1997, are barred by the applicable statute of limitations.

c. Whether the plaintiff’s claim against defendant for intentional infliction of emotional distress has been released by the language of the Marital Settlement Agreement.”

After the circuit court made its written finding, Robert applied to the appellate court for leave to appeal and his application was granted. In addition to the three issues certified for review, the court addressed an immunity issue raised by Robert on appeal. The appellate court concluded that Lynn, as plaintiff, could “maintain an action at law to recover monetary damages proximately caused by her ex-husband’s pattern of abusive treatment during the course of their ill-fated marriage.” 333 Ill. App. 3d 1167, 1170. One justice dissented in part. We granted Robert’s petition for leave to appeal from the appellate court’s judgment (177 Ill. 2d R. 315) and now affirm.

Because this appeal concerns questions of law certified by the circuit court pursuant to Supreme Court Rule 308, and because it arose in the context of orders denying section 2–619 and section 2–615 motions to dismiss, our review is 
de novo
. 
Eads v. Heritage Enterprises, Inc.
, 204 Ill. 2d 92, 96 (2003); 
Robinson v. Toyota Motor Credit Corp.
, 201 Ill. 2d 403, 418-19 (2002); 
Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.
, 186 Ill. 2d 472, 480, 491 (1999). Additionally, we review 
de novo
 Robert’s claim of immunity, as it involves a question of statutory interpretation. 
Eads
, 204 Ill. 2d at 96; 
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 503 (2000). While the immunity question was not certified for review, we agree with the appellate court that the question is properly addressed, because it “relates to the appropriateness of the orders that gave rise to this appeal.” 333 Ill. App. 3d at 1184; see 
Bright v. Dicke
, 166 Ill. 2d 204, 208 (1995).

The first matter before us for review is whether Lynn’s complaint states a cause of action for intentional infliction of emotional distress. In ruling on a section 2–615 motion to dismiss, the court must accept as true all well-pleaded facts in the complaint and all reasonable inferences which can be drawn therefrom. 
Kolegas v. Heftel Broadcasting Corp.
, 154 Ill. 2d 1, 8-9 (1992). The question presented by a motion to dismiss a complaint for failure to state a cause of action is whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. 
Kolegas
, 154 Ill. 2d at 9; see also 
McGrath v. Fahey
, 126 Ill. 2d 78, 90 (1988). In making this determination, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. 
Kolegas
, 126 Ill. 2d at 9; 
McGrath
, 126 Ill. 2d at 90.

According to the allegations contained in Lynn’s complaint, since the parties’ marriage in October 1986, and continuing for over a year after the December 1997 dissolution of their marriage:

“[Robert] entered into a continuous and outrageous course of conduct toward [Lynn] with either the intent to cause emotional distress to [Lynn] or with reckless disregard as to whether such conduct would cause emotional distress to [Lynn], said continuing course of conduct, including but not limited to, the following:

A. On repeated occasions, [Robert] has battered [Lynn] by striking, kicking, shoving, pulling hair and bending and twisting her limbs and toes.

* * *

B. On repeated occasions, [Robert] has prevented [Lynn] from leaving the house to escape the abuse.

* * *

C. On repeated occasions, [Robert] has yelled insulting and demeaning epithets at [Lynn]. Further, [Robert] has engaged in verbal abuse which included threats and constant criticism of [Lynn] in such a way as to demean, humiliate, and degrade [Lynn].

* * *

D. On repeated occasions, [Robert] threw items at [Lynn] with the intent to cause her harm.

* * *

E. On repeated occasions, [Robert] attempted to isolate [Lynn] from her family and friends and would get very upset if [Lynn] would show the marks and bruises resulting from [Robert’s] abuse to others.

F. On repeated occasions since the divorce, [Robert] has engaged in stalking behavior.

* * *

G. On at least one occasion, [Robert] has attempted to interfere with [Lynn’s] employment by confiscating her computer. Additionally, [Robert] broke into [Lynn’s] locked drug cabinet for work on or about March 23, 1997.”

The complaint further alleged, as examples of conduct within the categories set forth above, dozens of episodes of abusive behavior, including specific details and time frames for the various physical and emotional attacks.

In 
McGrath v. Fahey
, 126 Ill. 2d 78 (1988), this court set forth the three elements necessary to state a cause of action for intentional infliction of emotional distress, stating:

“First, the conduct involved must be truly extreme and outrageous. Second, the actor must either 
intend
 that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause 
severe
 emotional distress. (
Public Finance Corp. v. Davis
 (1976), 66 Ill. 2d 85, 90.)” (Emphases in original.) 
McGrath
, 126 Ill. 2d at 86.

In the case at bar, Robert first contends that the allegations of Lynn’s complaint do not sufficiently set forth conduct which was extreme and outrageous when considered “[i]n the context of the subjective and fluctuating nature of the marital relationship.” In support of this contention, Robert cites several cases from other jurisdictions that have addressed the policy ramifications of allowing a spouse to maintain an action for intentional infliction of emotional distress based upon acts occurring during the marriage. In 
Pickering v. Pickering
, 434 N.W.2d 758, 761 (S.D. 1989), the Supreme Court of South Dakota held that the tort of intentional infliction of emotional distress should be unavailable as a matter of public policy when predicated on conduct which leads to the dissolution of a marriage. However, unlike the case at bar, the conduct serving as the basis for the tort in 
Pickering
 was the wife’s extramarital affair, and the court noted that South Dakota law already provided a remedy for this type of claim in the form of an action against the paramour for alienation of affections. 
Pickering
, 434 N.W.2d at 760-61.
(footnote: 1) Next, Robert cites 
Hakkila v. Hakkila
, 112 N.M. 172, 179, 812 P.2d 1320, 1327 (App. 1991), in which the Court of Appeals of New Mexico found that a husband’s insults and occasional violent outbursts over the course of the parties’ 10-year marriage were insufficiently outrageous to establish liability for intentional infliction of emotional distress. The 
Hakkila
 court additionally found insufficient evidence that the alleged wrongful conduct caused severe emotional distress. 
Hakkila
, 112 N.M. at 179, 812 P.2d at 1327. Notably, while counseling caution, the court did not find that New Mexico’s public policy barred recognition of the tort in the marital context. 
Hakkila
, 112 N.M. at 174-75, 812 P.2d at 1322-23.

Finally, Robert cites a Texas case, 
Villasenor v. Villasenor
, 911 S.W.2d 411, 415 n.2 (Tex. Civ. App. 1995), wherein the court, in 
dicta
, noted that because the marital relationship “ ‘is highly subjective and constituted by mutual understandings and interchanges which are constantly in flux[,]’ *** [f]or purposes of determining outrageous conduct, the insults, indignities, threats, annoyances, petty oppressions, or other trivialities associated with marriage and divorce must be considered upon the individual facts of each case.” However, Illinois case law makes clear that under no circumstances would “ ‘mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities’ “ qualify as outrageous conduct. 
McGrath
, 126 Ill. 2d at 86, quoting Restatement (Second) of Torts §46, Comment 
d
, at 73 (1965); 
Kolegas
, 154 Ill. 2d at 20-21. Rather, the nature of the defendant’s conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community. 
Kolegas
, 154 Ill. 2d at 21. Thus, while we agree that special caution is required in dealing with actions for intentional infliction of emotional distress arising from conduct occurring within the marital setting, our examination of both the law of this state and the most commonly raised policy concerns leads us to conclude that no valid reason exists to restrict such actions or to require a heightened threshold for outrageousness in this context.

One policy concern that has been advanced is the need to recognize the “mutual concessions implicit in marriage,” and the desire to preserve marital harmony. See 
Henriksen v.Cameron
, 622 A.2d 1135, 1138-39 (Me. 1993). However, in this case, brought after the parties were divorced, “there is clearly no marital harmony remaining to be preserved.” 
Henriksen
, 622 A.2d at 1139. Moreover, we agree with the Supreme Judicial Court of Maine that “behavior that is ‘utterly intolerable in a civilized society’ and is intended to cause severe emotional distress is not behavior that should be protected in order to promote marital harmony and peace.” 
Henriksen
, 622 A.2d at 1139, quoting 
Vicnire v. Ford Motor Credit Co.
, 401 A.2d 148, 154 (Me. 1979).

Indeed, the Illinois legislature, in creating the Illinois Domestic Violence Act of 1986 (Act) (750 ILCS 60/101 
et seq
. (West 2002)), has recognized that domestic violence is “a serious crime against the individual and society” and that “the legal system has ineffectively dealt with family violence in the past, allowing abusers to escape effective prosecution or financial liability.” 750 ILCS 60/102(1), (3) (West 2002). However, as the appellate court herein noted, while the Act created the crime of domestic battery and “provides a number of remedies in an effort to protect abused spouses and family members, it did not create a civil cause of action to remedy the damages done.” 333 Ill. App. 3d at 1169. Thus, it would seem that the public policy of this state would be furthered by recognition of the action at issue.

A second policy concern is the threat of excessive and frivolous litigation if the tort is extended to acts occurring in the marital setting. Admittedly, the likelihood of vindictive litigation is of particular concern following a dissolution of marriage, because “the events leading to most divorces involve some level of emotional distress.” 
Henriksen
, 622 A.2d at 1139. However, we believe that the showing required of a plaintiff in order to recover damages for intentional infliction of emotional distress provides a built-in safeguard against excessive and frivolous litigation. As the appellate court herein stated: “When conduct is truly extreme and outrageous, it is more likely that severe emotional distress suffered by the victim was actually caused by that conduct.” 333 Ill. App. 3d at 1173.

Another policy consideration which has been raised is that a tort action for compensation would be redundant. However, as earlier noted, while our legislature has recognized the inadequacy of our legal system in allowing abusers to escape financial liability for domestic violence, the laws of this state provide no compensatory relief for injuries sustained. An action for dissolution of marriage also provides no compensatory relief for domestic abuse. See 
Merenoff v. Merenoff
, 76 N.J. 535, 556, 388 A.2d 951, 962 (1978) (divorce provides an escape from tortious abuse, but can hardly be equated with a civil right to redress and compensate for personal injuries). In Illinois, as in most other states, courts are not allowed to consider marital misconduct in the distribution of property when dissolving a marriage. See 750 ILCS 5/503(d) (West 2002).

After examining case law from courts around the country, we find the majority have recognized that public policy considerations should not bar actions for intentional infliction of emotional distress between spouses or former spouses based on conduct occurring during the marriage. See 
Henriksen
, 622 A.2d at 1140 (and cases cited therein). Additionally, our appellate court, while only considering the 
res judicata
 and collateral estoppel effects of such suits, has found that a plaintiff’s intentional infliction of emotional distress action against her former husband for conspiring to murder her was not barred by their prior dissolution proceeding. See 
Vance v. Chandler
, 231 Ill. App. 3d 747, 753 (1992).

Further, in 
McGrath
, 126 Ill. 2d at 86-90, this court identified several factors that may be considered in determining whether a defendant’s conduct is extreme and outrageous. We find the 
McGrath
 court’s comments regarding one such factor to be particularly relevant when examining, as alleged herein, outrageous conduct in the light of a marital relationship:

 “It is thus clear *** that the degree of power or authority which a defendant has over a plaintiff can impact upon whether that defendant’s conduct is outrageous. The more control which a defendant has over the plaintiff, the more likely that defendant’s conduct will be deemed outrageous, particularly when the alleged conduct involves either a veiled or explicit threat to exercise such authority or power to plaintiff’s detriment. Threats, for example, are much more likely to be a part of outrageous conduct when made by someone with the ability to carry them out than when made by someone in a comparatively weak position.” 
McGrath
, 126 Ill. 2d at 86-87.

Indeed, Illinois cases in which the tort of intentional infliction of emotional distress has been sufficiently alleged have very frequently involved a defendant who stood in a position of power or authority relative to the plaintiff. See, 
e.g.
, 
McGrath
, 126 Ill. 2d at 86-89 (and cases cited therein). While these past cases have generally involved abuses of power by employers, creditors, or financial institutions, we see no reason to exclude the defendant at issue here, a spouse/former spouse, from the many types of individuals who may be positioned to exercise power over a plaintiff. See 
Kolegas
, 154 Ill. 2d at 22-23; see also D. Poplar, 
Tolling the Statute of Limitations for Battered Women After Giovine v. Giovine: Creating Equitable Exceptions for Victims of Domestic Abuse
, 101 Dick. L. Rev. 161, 170, 175 (1996) (many battered women remain in an abusive relationship because they are economically dependent upon their spouses, they fear for the well-being of their children, or fear that leaving will only encourage their spouses to commit more severe violence; indeed, constant physical and mental abuse causes a battered woman to develop a belief in the strength and omnipotence of her abuser).

Therefore, we conclude that neither the policy considerations commonly raised nor the law of this state support a conclusion that an action for intentional infliction of emotional distress based upon conduct occurring in the marital setting should be barred or subject to any heightened threshold for establishing outrageousness. With this background in mind, we now examine the allegations set forth in Lynn’s complaint to determine whether Robert’s conduct satisfies the “outrageousness” requirement.

As earlier stated, to qualify as outrageous, the nature of the defendant’s conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community. 
Kolegas
, 154 Ill. 2d at 21, citing Restatement (Second) of Torts §46, Comment 
d
, at 73 (1965). Here, Robert contends that “Lynn’s allegations are not sufficiently repeated and pervasive so as to justify a claim for intentional infliction of emotional distress.” However, the 
McGrath
 court concluded that “[t]he outrageousness of a defendant’s conduct must be determined in view of all the facts and circumstances pleaded and proved in a particular case.” 
McGrath
, 126 Ill. 2d at 90. A pattern, course, and accumulation of acts can make an individual’s conduct “sufficiently extreme to be actionable, whereas one instance of such behavior might not be.” 
Pavlik v. Kornhaber
, 326 Ill. App. 3d 731, 746 (2001).

The issue of whether domestic abuse can be sufficiently outrageous to sustain a cause of action for intentional infliction of emotional distress is apparently one of first impression in Illinois. Other jurisdictions, however, have found similar allegations of recurring cycles of physical and verbal abuse, wherein the conduct went far beyond the “trials of everyday life between two cohabiting people,” to be sufficiently outrageous to fall within the parameters of section 46 of the Restatement (Second) of Torts. 
Curtis v. Firth
, 123 Idaho 598, 606, 850 P.2d 749, 757 (1993), see also 
Toles v. Toles
, 45 S.W.3d 252, 262 (Tex. Civ. App. 2001) (when abusive conduct such as being assaulted, intimidated, and threatened becomes a regular pattern of behavior, it should not be accepted in a civilized society).

In the instant case, we must agree with the appellate court that, when the above-summarized allegations of the complaint are viewed in their entirety, they show a type of domestic abuse that is extreme enough to be actionable:

“It combines more than a decade of verbal insults and humiliations with episodes where freedom of movement was deprived and where physical injury was often inflicted. The alleged pattern of abuse, combined with its duration, worked a humiliation and loss of self-esteem. Regardless of the form in which it arrived, violence was certain to erupt, and when seasons of spousal abuse turn to years that span the course of a decade, we are unwilling to dismiss it on grounds that it is unworthy of outrage.” 333 Ill. App. 3d at 1176.

Therefore, where we find that a reasonable trier of fact could easily conclude that Robert’s conduct was so outrageous as to be regarded as intolerable in a civilized community, we reject his contention that the complaint fails to sufficiently allege this element.

It is equally clear, and Robert does not argue to the contrary, that Lynn’s complaint adequately pleads the second element necessary to state a cause of action for intentional infliction of emotional distress, 
i.e.
, that Robert either intended to inflict, or knew that his conduct was likely to inflict, severe emotional distress upon Lynn. However, Robert does contest the adequacy of the complaint as to the third necessary element, that his conduct in fact caused severe emotional distress. He argues that Lynn’s complaint “contains no factual allegations from which the level of severity of the emotional distress could be inferred.” We must disagree.

Lynn’s complaint specifically alleges that, “[a]s a direct and proximate result of the entirety of [Robert’s] course of conduct, [she] has sustained severe emotional distress including, but not limited to[,] loss of self-esteem and difficulty in forming other relationships, and a form of Post Traumatic Stress Disorder sustained by battered and abused women as a result of being repeatedly physically and verbally abused and harassed over a long period of time.” The complaint also alleges that Lynn has suffered depression and a “fear of being with other men,” and that her enjoyment of life has been substantially curtailed. Finally, it is alleged that Lynn has incurred, and will continue to incur, medical and psychological expenses in an effort to become cured or relieved from the effects of her mental distress.

Emotional distress includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. See Restatement (Second) of Torts §46, Comment 
j
, at 77 (1965). “ ‘The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity.’ Restatement (Second) of Torts §46, comment 
j
, at 77-78 (1965).” 
McGrath
, 126 Ill. 2d at 86. In 
Kolegas
, this court found that the plaintiffs’ complaint satisfied the third element necessary to support an emotional distress claim where “[t]he facts alleged in support of the outrageous character of the defendants’ conduct are sufficient to support the additional allegation that the plaintiffs suffered severe emotional distress as a result of that conduct.” 
Kolegas
, 154 Ill. 2d at 25, citing Restatement (Second) of Torts §46, Comment 
j
, at 77-78 (1965) (severe emotional distress must be proved; but in many cases the extreme and outrageous character of the defendant’s conduct is in itself important evidence that the distress has existed). Here, we find that Lynn has sufficiently alleged that as a result of enduring Robert’s physical and psychological abuse for the duration of their 11-year marriage and beyond, she suffered severe emotional distress. Therefore, where the complaint sets forth sufficient facts which, if proven, could entitle Lynn to relief, we conclude that she has stated a cause of action for intentional infliction of emotional distress. We, of course, express no opinion on the substantive merits of Lynn’s complaint. We simply hold that, taking the allegations of the complaint as true, as we are required to do for purposes of our review, the complaint is sufficient to survive a motion to dismiss.

The second certified question we examine is whether Lynn’s claim for intentional infliction of emotional distress based on conduct prior to August 25, 1997, is barred by the applicable statute of limitations. Robert contends that each separate act of abuse triggered a new statute of limitations so that “all claims by Lynn based upon incidents occurring prior to August 25, 1997,” or more than two years before the date on which Lynn filed her complaint, would be time-barred. Lynn responds that Robert’s actions constitute a “continuing tort” for purposes of the statute of limitations and that her complaint, filed within two years of the occurrence of the last such tortious act, is therefore timely. The appellate court majority agreed with Lynn. 333 Ill. App. 3d at 1181.

When a defendant makes a motion to dismiss the plaintiff’s complaint based on the statute of limitations under section 2–619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion. 
Hermitage Corp. v. Contractors Adjustment Co.
, 166 Ill. 2d 72, 84-85 (1995). A section 2–619 motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. 
Chicago Teachers Union, Local 1 v. Board of Education of the City of Chicago
, 189 Ill. 2d 200, 206 (2000). Here, Robert contends that almost all of the alleged conduct contained in Lynn’s complaint took place outside the two-year statute of limitations for personal injury. We agree that the applicable statute of limitations for intentional infliction of emotional distress is two years, because the tort is a form of personal injury. 735 ILCS 5/13–202 (West 1998). The ultimate question, however, is when the statute of limitations began to run in the instant case.

Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another. 
Sundance Homes, Inc. v. County of Du Page
, 195 Ill. 2d 257, 266 (2001), quoting 
Davis v. Munie
, 235 Ill. 620, 622 (1908). However, under the “continuing tort” or “continuing violation” rule, “where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.” 
Belleville Toyota, Inc. v. Toyota Motor Sales
, 
U.S.A., Inc.
, 199 Ill. 2d 325, 345 (2002); see also 
Pavlik v. Kornhaber
, 326 Ill. App. 3d 731, 745 (2001);
 Bank of Ravenswood v. City of Chicago
, 307 Ill. App. 3d 161, 167 (1999); 
Field
 
v. First National Bank of Harrisburg
, 249 Ill. App. 3d 822, 825 (1993); 
Hyon Waste Management Services, Inc. v. City of Chicago
, 214 Ill. App. 3d 757, 763 (1991); 
City of Rock Falls v. Chicago Title & Trust Co.
, 13 Ill. App. 3d 359, 364 (1973).

At this juncture, we believe it important to note what does 
not
 constitute a continuing tort. A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. See 
Pavlik
, 326 Ill. App. 3d at 745; 
Bank of Ravenswood
, 307 Ill. App. 3d at 167; 
Hyon
, 214 Ill. App. 3d at 763. Thus, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff’s interest and inflicted injury, and this is so despite the continuing nature of the injury. See 
Bank of Ravenswood
, 307 Ill. App. 3d at 167-68; 
Hyon
, 214 Ill. App. 3d at 763; 
Austin v. House of Vision, Inc.
, 101 Ill. App. 2d 251, 255 (1968). For example, in 
Bank of Ravenswood
, the appellate court rejected the plaintiffs’ contention that the defendant city’s construction of a subway tunnel under the plaintiff’s property constituted a continuing trespass violation. The plaintiffs’ cause of action arose at the time its interest was invaded, 
i.e.
, during the period of the subway’s construction, and the fact that the subway was present below ground would be a continual effect from the initial violation, but not a continual violation. 
Bank of Ravenswood
, 307 Ill. App. 3d at 168; see also 
Hyon
, 214 Ill. App. 3d at 765 (plaintiff’s federal due process claim did not establish a continuing tort, where alleged wrongful sealing of plaintiff’s incinerator by defendant city was single, discreet event and any alleged damages resulting from city’s act were instead continued ill effects from a single alleged due process violation).

A continuing tort, therefore, does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant’s conduct as a continuous whole for prescriptive purposes. See 
Pavlik
, 326 Ill. App. 3d at 745. Thus, in 
City of Rock Falls
, 13 Ill. App. 3d at 364, where the defendant city and its mayor had continuously engaged in various acts of tortious interference with the utilization of the plaintiff’s property over a period of three years, the appellate court held that the violation of the plaintiff’s rights was a continuing tort that did not cease until the date of the last injury or when the tortious acts ceased. See also 
Field
, 249 Ill. App. 3d at 825-26 (continuing tort found where numerous acts of improperly cashing checks over four-year period constituted an ongoing scheme amounting to one transaction, so that statute of limitations did not begin to run until date on which last check was cashed).

This court recently examined the issue of whether a continuing violation existed in 
Belleville Toyota, Inc. v. Toyota Motor Sales
, 
U.S.A., Inc.
, 199 Ill. 2d 325 (2002). There it was held that the continuing violation rule did not apply where the defendants’ misconduct in the allocation of vehicles to the plaintiff did not constitute “one, continuing, unbroken, decade-long violation” of the Motor Vehicle Franchise Act (Franchise Act) (815 ILCS 710/1 
et seq.
 (West 2000)). 
Belleville Toyota
, 199 Ill. 2d at 349. Rather, each individual allocation, made two to four times per month, was a separate violation of the Franchise Act supporting a separate cause of action, because each allocation was the result of a discrete decision by the defendants “regarding the numerous adjustable parameters that drove the computerized allocation system.” 
Belleville Toyota
, 199 Ill. 2d at 348-49. Further, this court rejected the notion that 
Cunningham v. Huffman
, 154 Ill. 2d 398 (1993), had adopted “a continuing violation rule of general applicability in all tort cases.” 
Belleville Toyota
, 199 Ill. 2d at 347. In 
Cunningham
, this court held that a medical malpractice claim is not barred by the statute of repose where the plaintiff demonstrates that there was a continuous and unbroken course of negligent treatment so related as to constitute one continuing wrong. The 
Belleville Toyota
 court distinguished 
Cunningham
, explaining that the result in that case was based on interpretation of the language contained in the medical malpractice statute of repose, and added: “we discern no ‘unjust results’ in the present case, like those we sought to avoid in 
Cunningham
, which would militate in favor of applying a continuing violation rule.” 
Belleville Toyota
, 199 Ill. 2d at 347.

In the instant case, Robert cites 
Belleville Toyota
 and maintains that “each of the alleged acts of abuse inflicted by Robert upon Lynn over a 12 year period are separate and distinct incidents which give rise to separate and distinct causes of action, rather than one single, continuous, unbroken, violation or wrong which continued over the entire period of 12 years.” We must disagree. While it is true that the conduct set forth in Lynn’s complaint could be considered separate acts constituting separate offenses of, 
inter alia
, assault, defamation and battery, Lynn has alleged, and we have found, that Robert’s conduct 
as a whole
 states a cause of action for intentional infliction of emotional distress. Further, unlike 
Belleville Toyota
, there are “ ‘unjust results’ in the present case, like those we sought to avoid in 
Cunningham
, which would militate in favor” of applying the continuing tort rule in an action for intentional infliction of emotional distress. 
Belleville Toyota
, 199 Ill. 2d at 347.

As did the appellate court below, we find the case of 
Pavlik v. Kornhaber
, 326 Ill. App. 3d 731 (2001), to be instructive. In 
Pavlik
, the court first found that plaintiff’s complaint stated a cause of action for intentional infliction of emotional distress, where the defendant’s persistent notes, sexually explicit comments, insistence on meetings to discuss his desire for sexual contact and lewd behavior in their employer-employee relationship were such that a reasonable person would perceive them to be sufficiently offensive and sinister to rise to the level of extreme and outrageous behavior. 
Pavlik
, 326 Ill. App. 3d at 744. The court in 
Pavlik
 then found that the trial court had erred in dismissing the plaintiff’s claim as untimely. While the defendant argued that his sexual advances took place outside the two-year statute of limitations for personal injury, the plaintiff had alleged an ongoing campaign of offensive and outrageous sexual pursuit that established a continuing series of tortious behavior, by the same actor, and of a similar nature, such that the limitations period did not commence until the last act occurred or the conduct abated. See 
Pavlik
, 326 Ill. App. 3d at 745.

We find the following passage, wherein the 
Pavlik
 court explains its reasons for applying the continuing tort rule to the plaintiff’s action for intentional infliction of emotional distress, to be particularly cogent:

“Illinois courts have said that in many contexts, including employment, repetition of the behavior may be a critical factor in raising offensive acts to actionably outrageous ones. [Citation.] It may be the pattern, course and accumulation of acts that make the conduct sufficiently extreme to be actionable, whereas one instance of such behavior might not be. [Citation.] It would be logically inconsistent to say that each act must be independently actionable while at the same time asserting that often it is the cumulative nature of the acts that give rise to the intentional infliction of emotional distress. Likewise, we cannot say that cumulative continuous acts may be required to constitute the tort but that prescription runs from the date of the first act. [Citations.] Because it is impossible to pinpoint the specific moment when enough conduct has occurred to become actionable, the termination of the conduct provides the most sensible place to begin the running of the prescriptive period.” 
Pavlik
, 336 Ill. App. 3d at 745-46.

This same analysis is to be found in decisions from some of the other jurisdictions that have recognized the continuing tort rule in intentional infliction of emotional distress cases. See 
Jackson v. Creditwatch, Inc.
, 84 S.W.3d 397, 404 (Tex. Civ. App. 2002) (since usually no single incident in continuous chain of tortious activity can fairly or realistically be identified as the cause of significant harm, it seems proper to regard cumulative effect of conduct as actionable); 
Toles
, 45 S.W.3d at 262 (because intentional infliction of emotional distress is considered continuing tort, spouse’s conduct throughout parties’ marriage may be considered in action by other spouse); see also 
McCorkle v. McCorkle
, 811 So. 2d 258 (Miss. App. 2001); 
Mears v. Gulfstream Aerospace Corp.
, 225 Ga. App. 636, 484 S.E.2d 659 (1997). Most notably, in 
Curtis v. Firth
, 123 Idaho 598, 850 P.2d 749 (1993), the Idaho Supreme Court, in a case involving allegations of long-term domestic abuse similar to those at bar, stated:

“[T]he definition of intentional infliction of emotional distress requires that there must be a causal connection between the wrongful conduct and the emotional distress, and the emotional distress must be severe. [Citation.] By its very nature this tort will often involve a series of acts over a period of time, rather than one single act causing severe emotional distress. For that reason we recognize the concept of continuing tort *** should be extended to apply in other limited contexts, including particularly intentional infliction of emotional distress.” 
Curtis
, 123 Idaho at 604, 850 P.2d at 755.

We believe the appellate court herein properly applied this reasoning to the facts of this case where:

“The alleged domestic violence and abuse endured by Lynn *** spanned the entire 11-year marriage. No one disputes that the allegations set forth the existence of ongoing abusive behavior. Lynn’s psychologist, Dr. Michael E. Althoff, found that Lynn suffered from the ‘battered wife syndrome.’ He described the psychological process as one that unfolds over time. The process by which a spouse exerts coercive control is based upon ‘a systematic, repetitive infliction of psychological trauma’ designed to ‘instill terror and helplessness.’ Dr. Althoff indicated that the posttraumatic stress disorder from which Lynn suffered was the result of the entire series of abusive acts, not just the result of one specific incident.” 333 Ill. App. 3d at 1181.

The purpose behind a statute of limitations is to prevent stale claims, not to preclude claims before they are ripe for adjudication (
Guzman v. C.R. Epperson Construction, Inc.
, 196 Ill. 2d 391, 400 (2001)), and certainly not to shield a wrongdoer (
Tom Olesker’s Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.
, 61 Ill. 2d 129, 137 (1975)). As the Superior Court of New Jersey stated, in finding that a wife diagnosed with battered woman’s syndrome could sue her spouse in tort for physical and emotional injuries sustained by continuous acts of battering during the course of the marriage:

“It would be contrary to the public policy of this State, not to mention cruel, to limit recovery to only those individual incidents of assault and battery for which the applicable statute of limitations has not yet run. The mate who is responsible for creating the condition suffered by the battered victim must be made to account for his actions–
all
 of his actions. Failure to allow affirmative recovery under these circumstances would be tantamount to the courts condoning the continued abusive treatment of women in the domestic sphere.” (Emphasis in original.) 
Cusseaux v. Pickett
, 279 N.J. Super. 335, 345, 652 A.2d 789, 794 (1994).

Therefore, based upon the foregoing reasons, we agree with the appellate court herein, the court in 
Pavlik
, and with the growing number of jurisdictions that have found that the continuing tort rule should be extended to apply in cases of intentional infliction of emotional distress.

We note, however, that embracing the concept of a continuing tort in the area of intentional infliction of emotional distress “does not throw open the doors to permit filing these actions at any time.” 
Curtis
, 123 Idaho at 604, 850 P.2d at 755. As with any continuing tort, the statute of limitations is only held in abeyance until the date of the last injury suffered or when the tortious acts cease. Thus, we find that the two-year statute of limitations for this action began to run in August 1999, because Lynn’s complaint includes allegations of tortious behavior by Robert occurring as late as that month. Applying the continuing tort rule to the instant case, Lynn’s complaint, filed August 25, 1999, was clearly timely and her claims based on conduct prior to August 25, 1997, are not barred by the applicable statute of limitations.

Robert contends that even if the acts of alleged abuse are considered to be a continuing tort, the discovery rule should apply to determine when the statute of limitations began to run. Contrary to Robert’s contention, the discovery rule is inapplicable here. The discovery rule, like the continuing tort rule, is an equitable exception to the statute of limitations. However, under the discovery rule, a cause of action accrues, and the limitations period begins to run, when the party seeking relief knows or reasonably should know of an injury and that it was wrongfully caused. 
Belleville Toyota
, 199 Ill. 2d at 347; 
Clay v. Kuhl
, 189 Ill. 2d 603, 608 (2000).

By contrast, in the case of a continuing tort, such as the one at bar, a plaintiff’s cause of action accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated. See 
Pavlik
, 326 Ill. App. 3d at 745; 
Hyon
, 214 Ill. App. 3d at 763. Thus, as previously stated, a continuing tort does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing the defendant’s conduct as a continuous whole for prescriptive purposes. See 
Pavlik
, 326 Ill. App. 3d at 745. We therefore have no need to consider application of the discovery rule here, because we have found that Lynn’s complaint was filed within two years of the accrual of her action for the continuing tort of intentional infliction of emotional distress. See 
Pavlik
, 326 Ill. App. 3d at 746-47 (
Hertel v. Sullivan
, 261 Ill. App. 3d 156 (1994), is distinguishable where dispositive issue was applicability of discovery rule, not continuing tort rule).

The third certified question is whether Lynn’s claim against Robert for intentional infliction of emotional distress has been released by the language of their marital settlement agreement. Robert argues that two provisions within the agreement operate to release him from liability. The specific language of those two provisions is set forth in the appellate court’s opinion, and we see no need to repeat it here. Rather, we believe, as did the appellate court, that “the question can be simply answered in the negative in light of our holding on the continuing-tort theory.” 333 Ill. App. 3d at 1183.

The marital settlement agreement was executed by the parties on December 11, 1997. We have found that Lynn’s cause of action did not accrue until the date of the last tortious act, in August 1999. It is clear that a contractual release cannot be construed to include claims not within the contemplation of the parties, and it will not be extended to cover claims that may arise in the future. See 
Carona v. Illinois Central Gulf R.R. Co.
, 203 Ill. App. 3d 947, 951 (1990); 
Chubb v. Amax Coal Co.
, 125 Ill. App. 3d 682, 686 (1984); see also 
Farm Credit Bank of St. Louis v. Whitlock
, 144 Ill. 2d 440, 448 (1991) (a general release is inapplicable to an unknown claim). Indeed, “a release covering all claims that might later arise between the parties ‘would constitute a consent to the foregoing of legal protection for the future and would plainly be against public policy.’ (Havighurst, 
Construction of Releases
, at 616).” 
Chubb
, 125 Ill. App. 3d at 687. Thus, we agree with the appellate court’s conclusion that “[a] release with very general boilerplate language, such as the two provisions at issue, cannot be construed to release future causes of action between the parties.” 333 Ill. App. 3d at 1183.

Finally, we address Robert’s claim, made for the first time on appeal, that he is immune from suit for all acts occurring prior to January 1, 1988, the date upon which spouses were statutorily allowed to sue each other “for a tort committed during the marriage.” Ill. Rev. Stat. 1987, ch. 40, par. 1001; 750 ILCS 65/1 (West 1998). Robert argues that prior to January 1, 1988, interspousal suits were only allowed in situations where there was an intentional tort with physical harm. The appellate court majority held that because “the continuing-tort theory applies to domestic abuse cases in the context of a claim for the intentional infliction of emotional distress and because it is alleged that Lynn’s injuries and damages arise from the totality of Robert’s abusive acts, Robert’s claims of immunity fail.” 333 Ill. App. 3d at 1184. We need not reach this substantive analysis of the issue, however, because we find that Robert’s contention is erroneously based upon an earlier version of the statute which was no longer in effect at the time of the parties’ marriage in 1986.

Although the statute at issue did, for a brief time in 1982, state that “neither husband nor wife may sue the other for a tort to the person committed during coverture, except for an intentional tort where the spouse inflicted physical harm” (Ill. Rev. Stat. 1981, ch. 40, par. 1001), that section was amended effective July 13, 1982, to delete the phrase “where the spouse inflicted physical harm.” See Ill. Rev. Stat. 1983, ch. 40, par. 1001. Thus, at all times pertinent to Lynn’s cause of action for intentional infliction of emotional distress, the statute clearly provided that a wife could sue her husband for an intentional tort. We therefore affirm the appellate court’s holding that the statute affords Robert no protection. See 
Leonardi v. Loyola University of Chicago
, 168 Ill. 2d 83, 97 (1995) (reviewing court may sustain lower court decision on any grounds called for by the record, regardless of whether the lower court relied on those grounds).

For the foregoing reasons, the appellate court’s answers to the certified questions of law were correct, as was its rejection of the immunity issue. Lynn’s complaint satisfies the standard necessary to state a cause of action for the intentional infliction of emotional distress and Robert’s claims of immunity, statute of limitations and release under the marital settlement agreement fail. The appellate court’s judgment is therefore affirmed.

Affirmed
.

FOOTNOTES
1:     
1
We note that Illinois, while not formally abolishing the tort of alienation of affections, has severely limited recovery in such actions. See 740 ILCS 5/1 (West 1998).