NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 21, 2017[*]
Decided January 4, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1941

| | |
|---|---|
| TOM TUDUJ, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:15-cv-00320-RJD |
| | |
| SANOFI-AVENTIS U.S. LLC, et al., | Reona J. Daly, |
| *Defendants-Appellees*. | *Magistrate Judge*. |

## O R D E R

Tom Tuduj, an Illinois inmate, sued three pharmaceutical manufacturers contending that their drugs caused him to suffer a psychotic breakdown and murder his boss. The murder occurred in 2006, nine years before Tuduj filed his complaint, so the district court dismissed the suit as untimely. On appeal Tuduj asserts a number of reasons for extending the time to sue, but none has merit so we affirm.

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

"We construe the complaint in the light most favorable to the plaintiff[], accepting as true all well-[pleaded] facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiff['s] favor." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492–93 (7th Cir. 2011). We therefore reviewed both Tuduj's complaint and the Illinois Appellate Court's decision upholding his conviction for first-degree murder, *People v. Tuduj*, 9 N.E.3d 8 (Ill. App. Ct. 2014).

In early 2006 Tuduj began seeing a doctor for "stress related symptoms." He received prescriptions for Wellbutrin XL (for depression), Ambien CR (for insomnia), and generic propranolol (for high blood pressure). Tuduj began taking these drugs on May 10, 2006. From May 10 to May 15, he began to lose his "grasp on reality"; "to hear voices, see and hear things that [were] not there"; and to "[become] uncharacteristically angry," more depressed, and suicidal. He had nightmares about his boss killing people. By May 16 he was in a "hypnotic trance." On that day he stabbed his boss to death.

Tuduj was charged with first-degree murder, and was admitted to the psychiatric ward of the Cook County jail, where he was diagnosed as psychotic. He stopped taking his medication a month after the murder, and all side effects promptly ceased. Tuduj was eventually convicted of the murder after a bench trial and in April 2009 was sentenced to 40 years in prison. His conviction was affirmed on appeal in 2014. *Id.* at 42.

In 2015, nine years after the murder, Tuduj filed this tort suit against Sanofi-Aventis, the manufacturer of Ambien CR; GlaxoSmithKline, the manufacturer of Wellbutrin XL; and Wyeth Pharmaceuticals, which manufactures propranolol. He alleged that the companies knew (or should have known) but failed to warn consumers that their drugs caused homicidal impulses, violence, and sleepwalking. He also alleged that the companies conspired to conceal the dangerous side effects of the drugs and that this conspiracy led to his psychotic breakdown and the murder in May 2006.

Because a long time had passed since the murder, Tuduj attempted to plead around a likely statutes-of-limitations defense by invoking two Illinois doctrines. First, he sought the benefit of the discovery rule, which tolls a statute of limitations until a plaintiff knows or should know of his injury and its cause. Tuduj alleged that in 2014 he discovered that the manufacturers had acknowledged problems with Ambien CR and Wellbutrin XL. Second, he invoked the doctrine of "fraudulent concealment," which tolls a statute of limitations until five years after the plaintiff discovers a fraud that concealed his claim. Tuduj alleged that in 2014 he learned that the defendant companies issued fraudulent in press releases that their drugs were safe and effective.

The defendants moved to dismiss based on untimeliness, issue preclusion, and failure to state a claim. The district court—acting through a magistrate judge with the parties' consent, *see* 28 U.S.C. § 636(c)(1)—ruled that the limitations clock began to run on the date of Tuduj's violent crime: May 16, 2006. The judge noted that the longest possible limitations period was five years for fraud claims, 735 ILL. COMP. STAT. 5/13-205, and that period elapsed in May 2011. The judge rejected Tuduj's theories for tolling the time to sue.

On appeal Tuduj maintains that the limitations period did not begin running until at least 2014. He also argues that the magistrate judge should not have dismissed his case because a limitations bar is an affirmative defense more appropriate for summary judgment. We address the latter point first. Tuduj would be correct if the judge had dismissed the case for lack of evidence to support Tuduj's accrual theories. But the judge assumed the truth of Tuduj's factual assertions and ruled that those assertions were legally insufficient for tolling. No amount of discovery could change the result. As long as the judge assumed the truth of the allegations, if the "complaint nonetheless set[] out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Accordingly, no procedural error occurred.

Tuduj's arguments for extending the time to sue require that we first review Illinois's discovery rule. For injuries that are not readily discoverable, the Illinois limitations period begins "when the victim (1) discovers [the] injury and knows that it was wrongfully caused or (2) has 'sufficient information concerning [the] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.'" *Aebischer v. Stryker Corp.*, 535 F.3d 732, 733 (7th Cir. 2008) (quoting *Daubach v. Honda Motor Co.*, 707 N.E.2d 746, 750 (Ill. App. Ct. 1999)). This rule applies only to latent injuries; Illinois presumes that a "sudden, traumatic event" puts the plaintiff on immediate notice of potential claims. *Hollander v. Brown*, 457 F.3d 688, 692–93 (7th Cir. 2006); *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 899 (Ill. 1995). Because Tuduj's injury was a sudden psychotic breakdown culminating in a violent murder, his injury was not latent, so the discovery rule does not apply.

But even under the discovery rule, Tuduj's suit was untimely. The facts Tuduj knew in June 2006 put him on notice to inquire into a possible lawsuit. He knew then that within a week of taking the defendants' drugs in May, he had experienced bizarre symptoms, including violent dreams, suicidal impulses, and a psychotic breakdown that led him to kill. The next month when he stopped taking the medications, the

symptoms ceased. This is enough to "spark inquiry in a reasonable person" about whether the drugs might have caused his breakdown and whether the companies that made them had done something "legally actionable." *Mitsias v. I-Flow Corp.*, 959 N.E.2d 94, 101 (Ill. App. Ct. 2011).

Tuduj replies that although he knew of his injury, he did not know until 2014 that the defendants had wrongfully caused it. That is the year when, he says, he learned that the defendants had disclosed the unsafe side effects that caused his breakdown. But facts sufficient to prompt an inquiry into the wrongful cause of an injury need not be statements by the defendant. *See id.* Any facts suggesting "some possible fault on the part of the defendant" are enough. *Id.* at 102. And a reasonable person in Tuduj's position would have known in 2006 that the drugs were possibly at fault when their use produced a violent, psychotic breakdown that ended when the drug use ended. Indeed, during his trial testimony in 2009, Tuduj asserted this very point—that the combination of drugs he ingested caused his murderous, psychotic breakdown. *See Tuduj*, 9 N.E.3d at 20–21. Thus at least by the time of his trial, Tuduj had reason to believe that the defendants' drugs may have wrongfully caused his behavior. Even if we calculate the limitations periods from 2009, the time to sue expired by 2014, a year before Tuduj filed suit.

Tuduj responds that he cannot have *known* in 2009 that the drugs caused him to murder his boss because that is when he was convicted of murder, and the conviction reflects a finding that he, not a drug, was responsible for the killing. It was only later that, he says, he learned enough about the drugs to know that they caused him to kill. This argument does not help Tuduj. First, if the conviction conclusively establishes that the drugs did not cause Tuduj's breakdown, then it provides an alternate basis for dismissal argued by the defendants—issue preclusion. Tuduj may not relitigate in this civil case any issue—such as the cause of his violent act—that was decided at his trial. *See In re Emerald Casino, Inc.*, 867 F.3d 743, 759 (7th Cir. 2017) (explaining Illinois issue preclusion). In any case, his argument misunderstands the meaning of inquiry notice. Both before and after he was convicted, Tuduj had reason to believe that the defendants' drugs possibly produced violent side effects. That inquiry notice started the limitations clock.

Switching approaches, Tuduj next invokes Illinois's "continuing violations" doctrine in another effort to delay the accrual of his claims. *See Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). He argues that the defendants committed "continuing violations" until 2014, the year he learned they had publicly disclosed the drugs' side

effects. But the Illinois continuing-violation doctrine applies only if Tuduj's injury continued beyond 2006. *See id*. Tuduj's injury was complete in 2006 once his psychotic breakdown ended and he stopped taking the drugs. The continuing-violation doctrine is inapplicable.

Tuduj's last argument for extending the time to sue is based on his allegations of fraudulent concealment, but he misuses this doctrine too. He contends that by failing to warn consumers that the drugs might cause violent and homicidal impulses, and by affirmatively asserting that they were safe, the defendants fraudulently concealed information he needed to sue. In Illinois the statute of limitations may be tolled on the basis of fraudulent concealment if a plaintiff relies on statements by the defendant that "are calculated to lull or induce a claimant into delaying filing of his claim or to prevent a claimant from discovering his claim." *Wisniewski v. Diocese of Belleville*, 943 N.E.2d 43, 73 (Ill. App. Ct. 2011) (quotation marks omitted). But in waiting until 2015 to sue, Tuduj did not rely on assurances that the drugs were harmless. Based on his sworn testimony in 2009, he did not think that the drugs were harmless but in fact believed that they caused his breakdown. *See Gredell v. Wyeth Labs., Inc.*, 803 N.E.2d 541, 548–49 (Ill. App. Ct. 2004).

One final observation. This lawsuit may be an impermissible attempt to invalidate Tuduj's conviction. *See Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994) (federal courts do not permit collateral attacks on convictions "through the vehicle of a civil suit") (quotation marks omitted). But the defendants did not raise the *Heck* defense, so we do not address it. Tuduj raises additional arguments, but none warrant further discussion.

AFFIRMED.