# Illinois Official Reports

## Appellate Court

---

### *Taliani v. Resurreccion*, 2018 IL App (3d) 160327

---

| | |
|---|---|
| Appellate Court Caption | STEVEN A. TALIANI, Plaintiff-Appellant, v. LISA RESURRECCION, ROBERT RESURRECCION, ROBERT COFOID, and DYSART-COFOID FUNERAL HOME, Defendants (Lisa Resurreccion, Robert Cofoid, and Dysart-Cofoid Funeral Home, Defendants-Appellees). |
| District & No. | Third District<br>Docket No. 3-16-0327 |
| Filed | December 3, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Putnam County, No. 10-L-9; the Hon. Stuart P. Borden and the Hon. Michael P. McCuskey, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert L. Caplan, of Clarendon Hills, for appellant.<br><br>No brief filed for appellee Lisa Resurreccion.<br><br>Daniel P. Costello and R. Andrew Smith, of Daniel P. Costello & Associates, LLC, of Chicago, for other appellees. |

PRESIDING JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.


**OPINION**

¶ 1        Plaintiff, Steven A. Taliani, an inmate in the Department of Corrections (DOC) serving a sentence for murder and aggravated battery with a firearm, filed a civil action against three defendants—his ex-wife, Lisa Resurreccion; a funeral home director, Robert Cofoid; and a funeral home, Dysart-Cofoid Funeral Home—claiming that defendants denied him his right to visit with the remains of his deceased 19-year-old son and, in doing so, intentionally caused him to suffer extreme emotional distress.[1] The complaint was amended three times. Defendants filed motions to strike and dismiss portions of plaintiff's third amended complaint and motions for summary judgment. After briefing and hearings on the matter, the trial court granted defendants' motions. Plaintiff appeals. We affirm the trial court's judgment.

¶ 2                                    FACTS
¶ 3        Plaintiff and defendant, Lisa Resurreccion, were married in 1986 and divorced in 1991. During the course of their marriage, plaintiff and Lisa had one child, Austin, who was born in 1989. Plaintiff was a good father to Austin. In 1994, however, plaintiff was convicted of first degree murder and aggravated battery with a firearm and was sentenced to prison. That was the last time that plaintiff saw Austin in person. In 1995, Lisa married Robert Resurreccion. Thereafter, Lisa, Robert, and Austin lived together in the same residence. Lisa later changed Austin's last name to Resurreccion, although Robert never adopted Austin. Plaintiff did not approve of the name change.

¶ 4        On October 29, 2008, Austin passed away at the age of 19. Although plaintiff and Austin had not seen each other since plaintiff went to prison, plaintiff had strong, warm, and affectionate feelings for Austin because he was Austin's father. Lisa had possession of Austin's remains and she or her brother, Kent Zellmer, at her direction, made funeral arrangements with defendant, Dysart-Cofoid Funeral Home. Defendant, Robert Cofoid, was one of the directors of the funeral home and was a long-time friend of Kent. Austin's body was transported to the funeral home, and pursuant to Lisa's direction, a private visitation service was scheduled for November 1, 2008, from 9 a.m. until 10:30 a.m. After the private visitation service, Austin's remains were to be buried.

¶ 5        Shortly after Austin's death, plaintiff was notified by plaintiff's mother that Austin had passed away. Upon learning of Austin's death, plaintiff told the counselor at the DOC that he wanted to visit with Austin's remains. On or about October 30, 2008, the counselor made arrangements with the Cofoid defendants (a collective reference for Cofoid individually and

---

[1]Lisa's current husband, Robert Resurreccion, was also named as a defendant in plaintiff's lawsuit. By agreement of the parties, however, Robert was later dismissed and removed from the case as a defendant prior to the filing of the third amended complaint. Robert was again listed as a defendant in the caption of the third amended complaint, but none of the counts were specifically directed at him.

for the funeral home) for plaintiff to have a private visit with Austin's remains at the funeral home that would be concluded prior to the time of the private visitation service for Austin. After those arrangements were made, Lisa, her attorney, or a member of her family directed the Cofoid defendants to cancel the arrangements and to tell plaintiff that he would not be allowed to visit with Austin's remains. Pursuant to Lisa's directions, or those of her attorney or a family member, the Cofoid defendants also told the DOC counselor that if plaintiff came to the funeral home, plaintiff, and anyone who accompanied him, would be arrested for criminal trespass.

¶ 6        Plaintiff contacted his parents, and an attorney was hired for plaintiff to try to secure plaintiff's visitation with Austin's remains before Austin's remains were buried. On October 31, 2008, the attorney served a letter upon Lisa and the Cofoid defendants requesting that they allow plaintiff to have a final visit to grieve with Austin's remains prior to the burial. At no time, however, did plaintiff try to make funeral arrangements for Austin, try to change the funeral arrangements that were already in place, or try to pay for all or part of Austin's funeral. Neither Lisa nor the Cofoid defendants responded to the letter of plaintiff's attorney, and Austin's remains were buried without plaintiff being allowed a final visit.

¶ 7        In July 2010, plaintiff filed a *pro se* civil lawsuit against Lisa and the Cofoid defendants, alleging various causes of action.[2] Plaintiff later hired an attorney to represent him in this case, and the attorney filed various amended complaints on plaintiff's behalf. At issue in this appeal is plaintiff's third amended complaint, which was filed in June 2012. The third amended complaint contained eight counts: count I against Lisa for intentional infliction of emotional distress, count II against the Cofoid defendants for intentional infliction of emotional distress, count III against Lisa and the Cofoid defendants for intentional infliction of emotional distress, count IV against Lisa for interference with plaintiff's right to visit with Austin's remains (right to visit), count V against the Cofoid defendants for interference with plaintiff's right to visit, count VI against Lisa and the Cofoid defendants for interference with plaintiff's right to visit, count VII against the Cofoid defendants for intentional lack of due regard or respect for the dignity of plaintiff as Austin's next of kin (lack of due regard), and count VIII against the Cofoid defendants for negligent lack of due regard.

¶ 8        Lisa and the Cofoid defendants filed a motion to strike certain paragraphs of counts I, II, III, IV, V, and VI of the third amended complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2012)). In the motion to strike, defendants claimed, primarily, that the specified paragraphs of the third amended complaint were conclusory in nature and were not supported by allegations of fact. In addition to asking that those paragraphs be stricken from the third amended complaint, Lisa and the Cofoid defendants asked the trial court to grant any other relief that it deemed to be fit and just. The Cofoid defendants also filed a section 2-615 motion to dismiss count VII of the third amended complaint, alleging, among other things, that count VII failed to state a cause of action.[3]

---

[2]As noted in the footnote above, Lisa's husband was also named as a defendant in the lawsuit but was later dismissed and removed from the case as a defendant by the agreement of the parties.

[3]Although the motion to dismiss referred to both sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2012)), based upon the allegations that were made in the motion, it is more properly categorized as being just a section 2-615 motion to dismiss, as the section 2-619 portion of the motion alleged the failure to state a cause of action as the affirmative matter that defeated plaintiff's claim. We will, therefore, treat the motion as being a section 2-615 motion to dismiss.

Although not quite clear from the record, it appears that the motion to dismiss was treated as applying to count VIII as well.

¶ 9    In August 2012, a hearing was held on the motions to strike and dismiss. A transcript of that hearing has not been made part of the record in this appeal. At the conclusion of the hearing, the trial court entered an order dismissing counts I (intentional infliction of emotional distress against Lisa), IV (interference with the right to visit against Lisa), VII (intentional lack of due regard against the Cofoid defendants), and VIII (negligent lack of due regard against the Cofoid defendants) in their entirety with prejudice and striking certain paragraphs from counts II, III, V, and VI.

¶ 10    In June 2015, the Cofoid defendants filed a motion for summary judgment as to counts II (intentional infliction of emotional distress against the Cofoid defendants), III (intentional infliction of emotional distress against Lisa and the Cofoid defendants), V (interference with the right to visit against the Cofoid defendants), and VI (interference with the right to visit against Lisa and the Cofoid defendants) of plaintiff's third amended complaint, the remaining counts of the third amended complaint that applied to the Cofoid defendants. Attached to the motion were various supporting exhibits, including the deposition of plaintiff.

¶ 11    Of relevance to this appeal, in plaintiff's deposition, plaintiff testified that he had previously suffered from anxiety and depression. Plaintiff began suffering from anxiety in 1991 after Lisa left him to terminate their marriage. Plaintiff's anxiety was long-standing and occurred when triggered by certain events, such as writing letters to Austin. Plaintiff's anxiety was never medically treated. Plaintiff was first diagnosed with depression in 1994 and was prescribed medication for depression in 1994 while he was in the DOC. Plaintiff stopped taking that medication in 1996. According to plaintiff, from the time he was sentenced to prison, he tried to send Austin about one letter a week, although he only received a response letter from Austin one time. As a result of Austin's death, plaintiff suffered depression, confusion, anxiety, panic attacks, crying, loss of appetite, heartache, and stomach pains. Plaintiff did not, however, suffer any physical injuries as a result of his emotional pain and did not seek any treatment for his emotional suffering, even though he had seen a medical doctor at the DOC for other reasons. When plaintiff was asked during his deposition how his condition changed after he found out his request to visit with Austin's remains was denied, plaintiff stated:

> "I mean, I was—I was grieving. When I found out I couldn't go, it was even more so because I wasn't going to be able to have an opportunity to say my good-byes in person under any circumstances, let alone, you know, the passing of a son. I think my grieving process was increased exponentially besides other feelings of being hurt and being mad at everybody involved, and it's really—it's difficult to describe, you know, what a person goes through at that time. A lot of crying. A lot of that."

Plaintiff acknowledged, however, that the symptoms he experienced after being denied a final visit with Austin were the same grief symptoms that he would have experienced from Austin's death but stated that they were made more severe because he was denied visitation. According to plaintiff, he also suffered embarrassment at the DOC because no other inmate had ever been denied visitation before in that situation. Plaintiff commented during his testimony that he did not seek treatment for his emotional suffering because he did not want to appear to be weak to other prisoners in his current prison setting, although he had sought psychological treatment previously in the DOC when he was at a different prison prior to Austin's death.

- 4 -

¶ 12    Plaintiff filed a response, opposing the Cofoid defendants' motion for summary judgment. Attached to the response were various supporting documents, including the depositions of Lisa, Kent, Cofoid, and Joan Zellmer (Lisa and Kent's mother). Of relevance to this appeal, the deposition testimony of Lisa, Kent, and Joan indicated that after plaintiff went to prison, Austin wanted nothing to do with plaintiff, never visited plaintiff, did not want to see the letters that plaintiff had written him, and only wrote one letter to plaintiff in response. In addition, Lisa testified further in her deposition testimony that she was not involved in making the funeral arrangements, that she did not know that plaintiff wanted to visit with Austin's remains, that she did not tell anyone to deny plaintiff's request to visit, and that she did not instruct anyone at the funeral home to have police officers present in case plaintiff showed up. When Lisa was asked if she ever felt that she did not want plaintiff to come to the funeral home, she responded that she did feel that way because Austin had not seen plaintiff in a long time and did not really know plaintiff.

¶ 13    As for Kent, he testified further in his deposition testimony that he was the person who made the arrangements for Austin's funeral because Lisa was not capable of doing so. Kent talked to Lisa one time initially about the arrangements, and Lisa commented that she did not want plaintiff at the funeral home. Based upon that comment, Kent directed Cofoid to deny plaintiff's request for visitation. When Kent was asked during his deposition about plaintiff's feelings for Austin and about plaintiff being upset about the denial of his request for visitation, Kent responded, "Shouldn't have pulled the trigger. If he thought a lot about his kid, he wouldn't have pulled the trigger. Obviously he didn't think too much of his kid."

¶ 14    Finally, Cofoid indicated further in his deposition testimony that he had no personal or professional preference as to whether plaintiff was allowed to visit with Austin's remains and that he was merely following the direction of the family (his client) on the matter. According to Cofoid, Lisa and other family members were involved in making the funeral arrangements. As a result of this incident, plaintiff filed a complaint with the Department of Financial and Professional Regulation against Cofoid. The complaint was investigated, and no disciplinary action was taken.

¶ 15    A hearing was held on the Cofoid defendants' motion for summary judgment in January 2016. After listening to the arguments of the attorneys, the trial court granted summary judgment for the Cofoid defendants on the remaining applicable counts of plaintiff's third amended complaint (counts II, III, V, and VI). In so doing, the trial court found that summary judgment was proper for the Cofoid defendants on plaintiff's intentional infliction of emotional distress claims (counts II and III) because the actions of the Cofoid defendants in this case were not extreme or outrageous, as was required for an intentional infliction of emotional distress claim to be maintained. The trial court also found that summary judgment was proper for the Cofoid defendants on plaintiff's intentional interference claims (counts V and VI) because the case law cited by plaintiff did not permit the trial court to recognize a new tort claim for the interference with a next of kin's alleged right to visit with the remains of a deceased relative. Lisa subsequently filed a similar motion for summary judgment on the remaining counts against her (counts III and VI), which the trial court also granted for the same reasons. Plaintiff appealed.

ANALYSIS

## I. Lisa's Motion to Dismiss

As his first and second contentions on appeal, plaintiff argues, although somewhat implicitly, that the trial court erred in granting Lisa's section 2-615 motion to dismiss the intentional infliction of emotional distress claim (count I) and the intentional interference with right to visit claim (count IV) that were filed in the third amended complaint against Lisa as the sole defendant. Plaintiff argues that the trial court's incorrect ruling was based upon three erroneous determinations made by the trial court: (1) that Lisa had not engaged in extreme or outrageous conduct, as necessary for an intentional infliction of emotional distress claim to be maintained; (2) that a deceased's next of kin did not have a common law right to visit with the deceased's remains; and (3) that a new tort action should not be recognized as existing for a violation of that alleged right. Plaintiff asks, therefore, that we reverse the trial court's grant of Lisa's section 2-615 motion to dismiss counts I and IV of the complaint and that we remand those counts for further proceedings.

Lisa has not filed an appellee's brief in this case. Although Lisa's attorney was involved in the appeal process and two extensions were granted for the attorney to file a brief on Lisa's behalf, no brief was ever filed. Later motions filed by Lisa's attorney to extend the brief filing deadline, which were filed well after that deadline had already passed, were denied by this court. We will, therefore, resolve this issue pursuant to the guidelines set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

When we attempt to do so, however, we are left with no choice but to affirm the trial court's ruling on Lisa's section 2-615 motion to dismiss because of the lack of a sufficient record on this issue. Plaintiff, as the appellant, had the burden of providing a sufficiently complete record for review of this issue and his claims of error. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Absent such a record, we will presume that the order entered by the trial court is in conformity with the law and has a sufficient factual basis. *Id.* Any doubts that arise from the lack of a complete record will be resolved against the appellant. *Id.* at 392. Without a transcript in this case (or an agreed statement of facts or bystander's report), we have no way of knowing why the trial court dismissed the claims as to Lisa but not as to the Cofoid defendants or as to Lisa and the Cofoid defendants jointly. We also have no way of knowing why the trial court dismissed certain counts outright with prejudice, rather than simply striking certain paragraphs of those counts, as Lisa's motion had requested. Based upon the insufficient record, we affirm the trial court's grant of Lisa's section 2-615 motion to dismiss counts I (intentional infliction of emotional distress against Lisa as the sole defendant) and IV (intentional interference with right to visit against Lisa as the sole defendant) of plaintiff's third amended complaint. See *id.* at 391-92.

Although the trial court also dismissed counts VII (intentional lack of due regard against the Cofoid defendants) and VIII (negligent lack of due regard against the Cofoid defendants), it does not appear that plaintiff is challenging that portion of the trial court's dismissal order on appeal as plaintiff has made no argument on appeal as to those dismissals.

¶ 22                         **II. Lisa's and the Cofoid Defendants' Motions for Summary Judgment
on Plaintiff's Remaining Claims for Intentional Infliction of Emotional Distress**

¶ 23     As his third point of contention on appeal, plaintiff argues that the trial court erred in granting Lisa's and the Cofoid defendants' motions for summary judgment on plaintiff's remaining claims for intentional infliction of emotional distress in the third amended complaint (count II against the Cofoid defendants and count III against Lisa and the Cofoid defendants jointly). Plaintiff asserts that summary judgment should not have been granted because a genuine issue of material fact exists as to whether defendants' conduct constituted extreme and outrageous conduct for the purposes of an intentional infliction of emotional distress claim. In making that assertion, plaintiff points out that physical injury is not required for a claim of emotional distress to be maintained. For the reasons stated, plaintiff asks that we reverse the trial court's grant of summary judgment on his remaining intentional infliction of emotional distress claims and that we remand this case for further proceedings.

¶ 24     The Cofoid defendants argue that the trial court's grant of summary judgment was proper and should be upheld. The Cofoid defendants assert that summary judgment was correctly granted in their favor because plaintiff failed to demonstrate that their conduct was extreme or outrageous or to show that he suffered severe emotional distress. The Cofoid defendants ask, therefore, that we affirm the trial court's grant of summary judgment as to plaintiff's remaining intentional infliction of emotional distress claims (counts II and III of the third amended complaint). As noted above, Lisa has not filed an appellee's brief in this appeal.

¶ 25     The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 26     To prevail on a claim of intentional infliction of emotional distress, the plaintiff must prove the following three elements: (1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988). Whether conduct is extreme and outrageous is determined using an objective standard based upon all of the facts and circumstances present in a particular case. See *id.* at 90. Mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not constitute extreme and outrageous conduct for the purposes of an intentional

infliction of emotional distress claim. *Id.* at 86. Rather, for extreme and outrageous conduct, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 270 (2003). It must be noted, however, that behavior that is merely rude, abrasive, or extremely inconsiderate, which would not otherwise be actionable in a claim for intentional infliction of emotional distress, may be deemed extreme and outrageous conduct if the defendant knows that the plaintiff is particularly susceptible to emotional distress. *McGrath*, 126 Ill. 2d at 89-90.

¶ 27 As for severity, it is well settled that infliction of emotional distress alone is not sufficient to give rise to a cause of action. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976). For an intentional infliction of emotional distress claim, the emotional distress suffered by the plaintiff must be severe. *Id.* Fright, horror, grief, shame, humiliation, worry, and other such mental conditions alone are not actionable, although such conditions may fall within the scope of a general definition of the term "emotional distress." *Id.* Rather to be actionable, the distress inflicted must be so severe that no reasonable person could be expected to endure it. *McGrath*, 126 Ill. 2d at 86. The intensity and the duration of the distress are factors to be considered in determining the severity of the distress. *Id.*

¶ 28 In the present case, after having reviewed the pleadings and supporting documents, we find that the trial court properly granted summary judgment for Lisa and the Cofoid defendants on the remaining intentional infliction of emotional distress claims in plaintiff's third amended complaint (counts II and III). The material facts in this case are not in dispute. Lisa's and the Cofoid defendants' conduct, although arguably insensitive and inconsiderate, did not rise to the level of constituting extreme and outrageous conduct. See *id.* at 86-90; *Feltmeier*, 207 Ill. 2d at 270. Based upon plaintiff's lack of any relationship with Austin due to plaintiff's own doing (plaintiff's imprisonment) and the fact that Austin apparently wanted nothing to do with plaintiff, we cannot say that either Lisa's or the Cofoid defendants' denial of plaintiff's visitation was conduct that was so extreme as to go beyond all possible bounds of decency. See *Feltmeier*, 207 Ill. 2d at 270. Nor can was say that the emotional distress experienced by plaintiff in this case was so severe that no reasonable person could be expected to endure it. See *McGrath*, 126 Ill. 2d at 86; *Public Finance Corp.*, 66 Ill. 2d at 90. Plaintiff suffered from many of the same conditions prior to Austin's death and acknowledged in his testimony that all of his conditions were essentially the same as those he would have experienced based upon Austin's death alone. In addition, plaintiff did not seek medical or psychological treatment for his emotional suffering after Austin's death, although he had sought medical treatment for other reasons after Austin's death and had sought psychological treatment and had taken medication for depression prior to Austin's death. Based upon plaintiff's inability to establish that either Lisa's or the Cofoid defendants' conduct was extreme and outrageous or that the emotional distress that he suffered was severe, we must conclude that the trial court properly granted Lisa's and the Cofoid defendants' motions for summary judgment as to the remaining intentional infliction of emotional distress claims in the third amended complaint (counts II and III). See *McGrath*, 126 Ill. 2d at 86-90; *Feltmeier*, 207 Ill. 2d at 270; *Public Finance Corp.*, 66 Ill. 2d at 90.

¶ 29     III. Lisa's and the Cofoid Defendants' Motions for Summary Judgment
on Plaintiff's Remaining Claims for Intentional Interference With the Right to Visit

¶ 30     As his final point of contention on appeal, plaintiff argues that the trial court erred in granting Lisa's and the Cofoid defendants' motions for summary judgment on plaintiff's claims for intentional interference with his right to visit (count V against the Cofoid defendants and count VI against Lisa and the Cofoid defendants jointly). Plaintiff asserts that summary judgment should not have been granted because such a right exists, or should be recognized, under Illinois law and that the interference with that right can give rise to a civil lawsuit for damages. Plaintiff asks, therefore, that we reverse the trial court's grant of summary judgment on his remaining intentional interference with the right to visit claims and that we remand this case for further proceedings.

¶ 31     The Cofoid defendants argue that the trial court's grant of summary judgment was proper and should be upheld. In support of that argument, the Cofoid defendants assert that Illinois law does not recognize a right of the next of kin to visit with a deceased relative's remains and that a cause of action does not exist and should not be recognized under Illinois law for the interference with that alleged right. As noted above, Lisa has not filed an appellee's brief in this case.

¶ 32     The legal rules that apply to a grant of summary judgment have been set forth previously. As indicated, our standard of review for a trial court's grant of summary judgment is *de novo*. *Adams*, 211 Ill. 2d at 43.

¶ 33     In the present case, much of plaintiff's argument on this issue is misplaced. Plaintiff cites several cases that he claims demonstrate that the next of kin have a common law right to visit with a deceased relative's remains. None of those cases, however, stand for that principle. Rather, all of the cases that plaintiff cites merely establish that the next of kin have a right of possession as to the deceased's remains so that they can make an appropriate disposition of those remains, whether burial or otherwise. See, *e.g.*, *Leno v. St. Joseph Hospital*, 55 Ill. 2d 114, 117 (1973). Thus, the cases cited by plaintiff do not support his position that a common law right to visit with a deceased's remains exists or that a cause of action should be recognized by this court for interference with that right. In addition, although plaintiff claims that such a cause of action is implied or inferred in the Funeral Directors and Embalmers Licensing Code (225 ILCS 41/1-5 (West 2010)), the Disposition of Remains Act (755 ILCS 65/5, 45, 50 (West 2010)), and the disorderly conduct provisions of the Criminal Code of 1961 that refer to the disturbance of a funeral (720 ILCS 5/26-6 (West 2010)), that contention is completely irrelevant here as plaintiff confirms in his reply brief that he has not pled a statutory cause of action. See *Pilotto v. Urban Outfitters West, L.L.C.*, 2017 IL App (1st) 160844, ¶ 15 (the court uses the private right of action analysis when the plaintiff alleges a cause of action that originates in a statute, but the statute does not set forth an express right of action; the private right of action analysis has no application when the plaintiff is proceeding on a common law theory). Furthermore, to the extent that plaintiff asserts that the public policy reflected in the above statutes supports his contention that a common law right to visit exists or should be recognized by this court, we are not persuaded. As we have already pointed out, the case law decisions on this issue do not recognize such a right. See, *e.g.*, *Leno*, 55 Ill. 2d at 117. Based upon the lack of a common law right held by the next of kin to visit with a deceased relative's remains, the trial court correctly found that no cause of action existed for interference with that alleged right and properly granted Lisa's and the Cofoid defendants' motions for

summary judgment as to plaintiff's remaining interference with right to visit claims in the third amended complaint (count V against the Cofoid defendants and count VI against Lisa and the Cofoid defendants jointly).

¶ 34                                              CONCLUSION

¶ 35        For the foregoing reasons, we affirm the judgment of the circuit court of Putnam County.

¶ 36        Affirmed.

¶ 37        JUSTICE HOLDRIDGE, dissenting:

¶ 38        It seems rather clear to me that denying a parent access to visit with their recently deceased child's remains, especially after previously granting access with agreed upon parameters, constitutes extreme and outrageous conduct. Nonetheless, the majority concludes that the defendants' conduct in this case was only "arguably insensitive and inconsiderate." *Supra* ¶ 28. In reaching this conclusion, the majority notes that Austin (1) did not want a relationship with the plaintiff and (2) lacked any "real" relationship with the plaintiff. These facts do not justify the defendants' conduct in this case. After all, despite the plaintiff's imprisonment and lack of any "real" relationship with Austin, the plaintiff remained Austin's legal father. Also, the plaintiff testified that he tried to send Austin a letter a week ever since his imprisonment. This obviously demonstrates that a relationship with Austin was important to him.

¶ 39        The majority also concludes that the plaintiff failed to establish that the emotional distress he suffered was severe. *Supra* ¶ 28. The majority emphasizes that the plaintiff (1) testified that he suffered from many of the same conditions prior to Austin's death and (2) did not seek medical or psychological treatment for his emotional suffering after Austin's death (even though he sought medical treatment for other reasons and had taken medication for depression prior to Austin's death). Though the plaintiff stated that he experienced the same symptoms before and after the defendants denied his final visit with Austin, he testified that those symptoms were " 'increased exponentially' " after the defendants denied his final visit. *Supra* ¶ 11. Additionally, it is unreasonable for the majority to conclude that the plaintiff's emotional distress was not severe on the basis that he did not seek medical treatment here but did in the past prior to Austin's death. Emotional distress does not come with an instruction manual to guide individuals on how they should process and seek attention for their condition.

¶ 40        Based on the foregoing, I would find that a genuine issue of material fact existed and the trial court erred as a matter of law when it granted Lisa's and the Cofoid defendants' motions for summary judgment on the plaintiff's claims for intentional infliction of emotional distress contained in his third amended complaint.